## CRESSEY *v.* TATOM, ET AL.

### MARRIAGE—EFFECT AT COMMON LAW.

At common law the giving of a woman in marriage operated as a gift of all her personal estate, actually or constructively in her possession, and of all personal estate which might be thereafter acquired by her during coverture, or reduced into her possession or that of her husband, unless protected by a settlement to her sole and separate use.

### JURISPRUDENCE—SOURCE OF.

The common law is the source of jurisprudence of those states which were originally colonies of England, and also of those states which have been established in the territories, the government of which was formed by emigration from the original states.

### PRESUMPTION AS TO COMMON LAW.

The rule is well established that the courts will presume that the common law prevails in other states, except so far as it is shown to be changed or repealed by statute. The courts cannot take judicial notice of the statutes of the different states which have changed the common law, but will presume that the common law is in force until this presumption is rebutted by proof.

APPEAL from Polk.  The facts are stated in the opinion.

*Kelsay & Burnett* for appellant.

Maintain that the property inherited by the plaintiff was not separate property.  That which sustains the right of a married woman to separate property, must be averred and proved.  (Bishop on Married Women, sec., 889; *Whitford v. Panama R. R. Co.*, 23 N. Y., 468; *Ryder* v. *Hulse*, 24 N. Y., 372; Story on Conflict of Laws, sec. 637.  The courts will presume that the general principles of the common law prevail in other states.  (*Whitford* v. *Panama R. R. Co.*, 23 N. Y., 468; 1 Wharton on Evidence, sec. 314; *Jordan* v. *Jordan*, 52 Maine, 320.)

*R. S. Strahan and W. G. Piper*, for respondent.

The property in controversy was purchased by the plaintiff with her own money, which she received by inheritance from her father's estate.  This brings the case within the settled doctrine of this court.  (*Linville* v. *Smith*, 6 Oregon, 202; *Rugh* v. *Ottenheimer*, 6 Oregon, 231.)  The court will presume that the law of Illinois is like our own.  (*Rape* v. *Heaton*, 9 Wis., 338; *Bramhall* v. *Van Campen*, 8 Minn., 13; *Monroe* v. *Douglas*, 1 Selden, 447; *Shaw* v. *Wood*, 8 Ind., 518; *White* v. *Charles*, 15 Maine, 470; *Hall* v. *Pillow*, 31 Ark., 32; *Hill* v. *Gigsby*, 32 Cal., 55.)

By the Court, LORD, C. J.

This is a suit in equity to enjoin the defendant Hall, as sheriff of Polk county, from selling the plaintiff's land on execution in favor of the defendant Tatom, and against the defendant, William E. Cressey.  Substantially, the facts are that the plaintiff, Lucy J. Cressey, is one of five heirs-at-law of Stephen Marshall, who died on the 15th day of September, 1849, in Illinois.  In 1869 the plaintiff married the defendant, William E. Cressey, and subsequently removed to California.  While the plaintiff and her husband resided in the last named state, the estate of her father was sold, and her

proportion was paid, " and she received said money as such heir, and as her distributive share of said estate." About the 1st of January, 1877, the plaintiff loaned the sum of one thousand dollars to Robert Middleton, which was a part of said money received from her father's estate in Illinois, and for which Middleton executed his note to the plaintiff. In June, 1878, the plaintiff and her husband removed from California to Oregon, and shortly after she authorized her husband, as her agent, to purchase the property in question, and to pay for the same. The plaintiff collected the note on Middleton, and out of part of the money realized upon said note, paid for said property through her husband. By mistake the deed was executed to her husband, William E. Cressey, which in a short time thereafter he corrected by deeding the property to the plaintiff. Defendant Tatom recovered judgment against the defendant, William E. Cressey, execution issued, and the property in dispute was levied upon, and to enjoin the sale of the same this suit was instituted, and a decree rendered for the plaintiff, from which an appeal has been taken by the defendants, Tatom and Hall, to this court.

Upon this state of facts the particular question presented for our determination is, to whom did the property in dispute belong, to the plaintiff, as 'her separate property, or to her husband, the defendant, William E. Cressey? If to the former, the decree of the circuit court was not error; but if to the latter, it must be reversed. At the common law the giving of a woman in marriage operated as a gift of all her personal estate, actually or constructively in her possession, and of all personal estate which might be thereafter acquired by her during coverture, or reduced into her possession or that of her husband, unless protected by a settlement to her sole and separate use.

In the case of the *Commonwealth* v. *Manley,* 12 Pick., 175, the doctrine of the common law is thus clearly stated by Morton, J.: " By our law, marriage is an absolute gift to the husband of all the wife's personal chattels in possession,

and so it is of all choses in action, if he reduces them into possession by receiving them, or recovering them at law. Thus all the personal property of the wife's which comes into the possession of the husband during coverture, becomes absolutely his, may be disposed of by him, is liable for his debts, and goes to his executor or administrator." (2 Blackstone's Commentaries, 433; *Jordan* v. *Jordan*, 52 Maine, 320; *Ladd* v. *Prentice*, 14 Conn., 110; 1 Bishop on Married Women, sec. 64, and authorities cited.)

Unless, then, restricted by a settlement, or by force of some statute in derogation of the common law, securing the property of the wife to her sole and separate use, wherever the common law prevails by mere force of the marital act, so completely is the identity of the wife merged into the existence of the husband, that her personal property at the marriage, or acquired during coverture, vests immediately and absolutely in him; her possession becomes his possession, so that if she have money in her pocket, and this money never comes within his personal control, being under her control, it is his, and not hers, and the like principle applies to all other chattels. (1 Bishop on Married Women, sec. 64.)

There can be no doubt that the common law is the basis of the laws of those states which were originally colonies of England, or carved out of such colonies. Chancellor Kent says: "It is the common jurisprudence of the United States, and was brought with them as colonists from England, and established here so far as it was adapted to our institutions and circumstances. It was claimed by the Congress of the United Colonies, in 1774, as a branch of those ' indubitable rights and liberties to which the respective colonies were entitled.'"

" In all the states," says Judge Field, " thus having a common origin, formed from colonies which constituted the same empire, and which recognized the common law as the source of their jurisprudence, it must be presumed that such common law exists—it has been so held in repeated instances

—and it rests upon the parties who assert a different rule to show the matter by proof. (10 Ala., U. S., 895.) A similar presumption must prevail as to the existence of the common law in those states which have been established in territory acquired since the revolution, where such territory was not, at the time of its acquisition, occupied by an organized and civilized community, where in fact the population of the new state, upon the establishment of government, was formed by emigration from the original states." (*Norris* v. *Harris*, 15 Cal., 252.)

The result is that the rule is so well established that in the absence of evidence to the contrary, the courts of a state will presume that the common law prevails in other states, except so far as it is shown to be changed or repealed by statute. The courts cannot take judicial notice of the statutes of the different states which have changed the common law, but will presume that the common law is in force until this presumption is rebutted by proof. (*Litchenberger* v. *Graham*, 50 Ind., 290; *Whitford* v. *Panama R. R.*, 23 N. Y., 468; *Hydrick* v. *Burke*, 30 Ark., 125; Wharton's Law of Evidence, sec. 314, and authorities cited.)

If the principles of the common law have been modified or changed in any of the states, by statute, in respect to any matter under which a right or privilege is claimed or sought to be enforced, the courts of another state, presumed to be acquainted with their own laws, the statute of such state must be averred and proved like other facts of which the courts do not take judicial notice, to avoid the presumption that exists in favor of the common law. In many states of the Union there have been enacted statutes enabling married women to hold their property to their sole and separate use, and free from the debts and contracts of their husbands. Such statutes are said to be in derogation of the common law, and to make them available, and to secure the rights which they were intended to protect, outside of the jurisdiction of such states, such statutes must be averred and

proved, to enable the courts of another state to take judicial notice of them, and to apply them in judicial examination to the matter in controversy.

Now apply these principles to the facts under consideration. The money received by the plaintiff while she and her husband were residing in California, was her distributive share arising from the sale of her father's estate in Illinois. If it was her separate property it became so by force of some statute enlarging the marital rights. No statute upon which such right of separate property is founded, was pleaded or introduced in evidence, and in the absence of such evidence, the court could not take judicial notice of it, and must presume the common law in force in such state. By the common law, the personal property, the money. coming to the wife during coverture vested immediately and absolutely in the husband; the possession of the plaintiff became the possession of her husband, and their subsequent removal to Oregon did not divest his ownership. The fact that the husband did not assert his marital rights does not alter the case. In *Rider* v. *Hulse*, 24 N. Y., 372, Judge Wright said: "It cannot be that because a husband suffers his wife to manage and deal with his estate as though it were her own, that he divests himself of the ownership, and assumes the character of trustee to hold it to her use." Much less can the omission to assert his own marital rights to the property owned by his wife at the time of the marriage, or subsequently acquired, operate to the prejudice of his creditors.

In *Hydrick* v. *Burke*, 30 Ark., 126, this identical question was decided. The court say: "Conceding it to be true that the money used in the payment for the property was that received by the wife for land in Tennessee, which came to her by descent, still, in the absence of a statute of that State enlarging the marital rights, the husband, by virtue of his marriage, was entitled to the money, the proceeds of the sale of the land. The statute of Tennessee was not introduced as evidence of the laws then in force, and the court

could not take judicial notice of the statutes of Tennessee. (*Cox* v. *Morrow*, 14 Ark., 606.)   In the absence of this evidence it is to be presumed that the common law is still in force in that state, and consequently the wife's claim to a separate property in the money must fail."   It follows that the property in dispute was purchased by and belonged to the defendant, William E. Cressey, and not to the plaintiff, and that it is liable for his debts.

Decree reversed.