**William C. Hickox and Irving B. Hickox, doing business under the name of W. C. Hickox & Co., v. Lazarus Fels, Joseph Fels and Samuel S. Fels, doing business under the name of Fels & Co.**

1. ATTORNEYS—*Can Not Withdraw from a Case Without his Client's Consent.*—An attorney can not legally withdraw from a case without the consent of his client, and the consent of the court.

2. RATIFICATION—*Tantamount to Prior Authority.*—It is immaterial whether a contract was authorized prior to its execution or subsequently

ratified. If a contracting party could authorize it in the first instance, he could ratify it subsequently.

3. GUARANTY—*Acceptance May be Inferred.*—It is not necessary that there should be a formal express acceptance of a guaranty, such acceptance may be inferred.

4. SAME—*Notice of Acceptance May be Inferred.*—Notice of acceptance of a guaranty need not be proved to have been given in writing, or in any particular form, but may be inferred by the jury from facts and circumstances which will warrant such an inference.

Assumpsit.—Appeal from the Circuit Court of Cook County; the Hon. GEORGE W. BROWN, Judge, presiding. Heard in this court at the March term, 1899. Affirmed. Opinion filed December 14, 1899.

F. H. GANSBERGEN, attorney for appellants.

Where there is a mere proposal by one to guarantee the performance of the undertaking by another, if credit be extended to such other the contract of guaranty is not complete until credit is extended and notice given of the acceptance of the guaranty. Ruffner v. Love, 33 Ill. App. 601.

PECK, MILLER & STARR, attorneys for appellees.

Notice of the acceptance of a guaranty need not be proved to have been given in writing or in any particular form, but may be inferred by the jury from the facts and circumstances which shall warrant such inference. Kirchoff v. Union Mutual Ins. Co., 33 Ill. App. 607; Powell v. Chicago Carpet Co., 22 Ill. App. 409.

MR. JUSTICE ADAMS delivered the opinion of the court.

This was an action of assumpsit by appellees against appellants on an alleged guaranty. The declaration consists of the special counts and two common counts for goods sold and delivered. The defendants pleaded the general issue only. The jury found the issues for appellees and assessed their damages at the sum of $664.15, and judgment was rendered on the verdict.

Appellants William C. Hickox and Irving B. Hickox, partners under the firm name of Hickox & Co., were engaged in the commission business in the city of Chicago.

William C. Hickox was also the president of the Hickox & Read Publishing Co., a corporation which published and circulated a Spanish paper in Spanish-speaking countries, which paper purported to represent manufacturers who desired to introduce their goods into such countries. Appellees were soap manufacturers in Philadelphia and partners under the firm name of Fels & Co.

Appellees put in evidence the following document:

"It is agreed by and between Fels & Co., of Philadelphia, Pennsylvania, party of the first part, and Hickox & Read Publishing Company, party of the second part, to wit:

"That party of the first part will furnish, say $100 worth of toilet soap manufactured by them, said goods to be forwarded to South America by party of the second part and there used by salesmen of the party of the second part as they deem most advisable for the purpose of making sales and establishing business connections for party of the first part.

"Said goods to be charged to party of the second part and paid for unless orders for $500 worth of goods are sent in and paid for before the expiration of this agreement.

"All orders of goods to be sent to the party of the first part through W. C. Hickox & Co., Chicago, Illinois, and due payment of same is guaranteed by W. C. Hickox & Co.

"The party of the first part further agrees to allow the party of the second part five (5) per cent commission on all orders when accepted by the party of the first part and settled for by the purchaser.

"This agreement to continue for the term of six (6) months, renewable if satisfactory at the option of both parties for a further term.

"All expenses in connection with the work above mentioned shall be borne by said party of the second part, and in no event shall the party of the first part be liable for any amount other than hereinbefore mentioned.

"FELS & Co.
"HICKOX & READ PUBLISHING Co.,
"W. B. Donnell,
"Secretary."

It will be observed that the foregoing agreement is without date, but it is shown by evidence, which will hereafter be referred to, that it was executed December 16, 1892.

Appellees received the following letter:

"CHICAGO, Dec. 19th, 1892.
"MESSRS. FELS & CO.,
    "1151 North 3rd St., Philadelphia, Pa.

"GENTLEMEN: We are in receipt of an agreement made with our Mr. Donnell by which you are to furnish at once $100 worth of toilet soap to be sent to Valparaiso as samples of your goods. We also note we are to sell $500 worth of your goods on or before the expiration of this agreement, which is six months from date, all orders to be guaranteed by W. C. Hickox & Co. If we are to be held responsible for the selling of $500 worth of your goods, the samples must be shipped us promptly so as to give our agents a chance to take orders; otherwise it would be impossible for us to comply with the terms of the contract. The S. S. 'Barden Tower,' we learn takes on our goods until at least the 24th inst., therefore the goods should be in New York before that time without fail. Do not fail to mark the goods as per instructions given you by Mr. Donnell and number the cases from one up, sending us invoice in duplicate and the R. R. receipt or bill of lading to Messrs. Hemenway & Browne, our forwarding agents in New York." * * *

"HICKOX & READ PUBLISHING CO.,
        "W. C. Hickox,
            "Pres. & Treas."

Subsequently the following letter was written by appellees to appellants:

"DECEMBER 21, 1892.
"MESSRS. W. C. HICKOX & CO.,
        1223 Monadnock Block, Chicago, Ill.

"GENTLEMEN: We enclose invoice and duplicate of shipment of sample lot of soaps to Valparaiso, Chili, per shipping memorandum sent herewith. We have notified Messrs. Hemenway & Browne that the amount of the invoice would be practically $100.

"The arrangement for forwarding these goods was made with Mr. Donnell, of the Hickox & Read Publishing Co., and the understanding was that you were to guarantee the bills.            Yours very truly,
                "FELS & CO."

Appellees received an answer to the last letter which, omitting unimportant matter, is as follows:

"CHICAGO, Dec. 23, 1892.

"MESSRS. FELS & Co.,
          1151 3rd Street, Philadelphia, Pa.

"GENTLEMEN: Yours of the 21st, enclosing invoice in duplicate for sample lot of soaps for Valparaiso, Chili, received, and everything seems to be in order.

"All orders sent you, either through Hickox & Read Publishing Co., or through W. C. Hickox & Co., will be guaranteed by us.

                              "HICKOX & READ PUB. Co.,
                                   "W. C. Hickox,
                                         "Pres. & Treas."

Appellees' letter having been addressed and mailed to W. C. Hickox & Co., the legal presumption is that it was received by that firm, and it would naturally be expected that it would be answered by and in the name of that firm, instead of in the name of the Hickox & Read Publishing Co. That it was received and answered by a member of the firm of W. C. Hickox & Co. is shown by the testimony of W. C. Hickox, who testified that any letters signed W. C. Hickox, as president, were written or dictated by him. February 24, 1893, appellants wrote to appellees the following letter:

"MESSRS. FELS & Co.,
          1151–1161 N. 3rd Street, Philadelphia.

"GENTLEMEN: We have your statement of the 24th inst., in which you say the account is past due, and that you will draw on us the 4th of the month unless we remit before. We think your bookkeeper has overlooked the contract in regard to this matter, as same is not due until the 16th of June, as per terms of contract. Therefore you will please make correction on your books, and oblige

                              "Yours very truly,
                                   "W. C. HICKOX & Co."

June 16, 1893, appellees again wrote to W. C. Hickox & Co., inclosing statement of account for the sample soaps, and informing appellants that they had drawn on them for the amount of the account, at one day's sight. Appellees received an answer, under date of June 20, 1893, saying:

"We did not accept your draft in payment of samples shipped to Valparaiso, for the reason that by our last mail our agents informed us that they had established an agency,

Hickox v. Fels.

and had received an order for goods, amounting to more than he $500 stipulated in the contract." * * *

"They anticipate prosperous times, and we have no doubt you will receive your share of orders from that country. The order will reach us by next mail, which should be here in the next few days."

Although appellees' letter was addressed to W. C. Hickox & Co., the answer to it is signed "Hickox & Read Pub. Co., W. C. Hickox, Pres. & Treas."

J. Parker Read, vice-president of the Hickox & Read Publishing Co., received from T. Elliott Rourke, of Valparaiso, Chili, an order of date May 19, 1893, for certain specified quantities of different kinds of soaps, of the value of $503.76. This order is headed, "Order No. 2800, from J. Parker Read. Valparaiso, Chili, May 19, 1893. For Fels & Co., Philadelphia, Pa. Mark T. E. R. 2800, Valparaiso, Chili." This order was enclosed in a letter from Read, of date May 30, 1898, the latter being addressed, "Messrs. Fels & Co., Philadelphia, Pa.," but the letter was sent, with its enclosure, to the appellants, Hickox & Co.

The order enclosed in Read's letter of May 30th contained instructions as to packing, and stated terms as follows: "Terms sixty days sight." Appellants having received Read's letter enclosing the order, wrote to appellees as follows:

"CHICAGO, July 1st, 1893.
"MESSRS. FELS & Co., 1151 N. 3d St., Philadelphia, Pa.

"GENTLEMEN: We have the pleasure of handing you enclosed an order received from T. Elliott Rourke, of Valparaiso, Chili, to which we referred some days ago. If these goods can go forward in the next few days, they will be in time for the S. S. 'Coya,' which is now advertised to sail about the 15th inst., and as this order calls by direct steamer, the chances are there will be no other steamer for some time.

"Do not fail to comply with this request in regard to boxing and shipping and make draft as he suggests. The law of that country requires that the gross weight of each box be marked in kilos, figuring two and one-fifth pounds per kilo, and all cases numbered from one up, letting invoice, which should be in duplicate, show same. * * *

"Very truly yours,
"W. C. HICKOX & Co."

July 7, 1893, appellants again wrote to appellees acknowledging receipt of a letter from appellees of date July 5, 1893, to the effect that appellees would be able to fill the order of T. Elliott Rourke, and expressing satisfaction with the same.

Under date of August 16, 1893, appellants, W. C. Hickox & Co., wrote to appellees as follows:

" You notified us that your goods would be in time for the S. S. ' Coya.' Did you succeed in getting the goods off? If so, kindly render us with a copy of your invoice, that we may place the same on file for future reference. We require this on all shipments when payment is guaranteed by us.

"Yours truly,
                    " W. C. HICKOX & CO."

In response, the following letter was sent by appellees to appellants:

                    " AUG. 18th, 1893.
" MESSRS. W. C. HICKOX & Co., Chicago, Ill.
" GENTLEMEN : In response to your favor of the 16th inst. we are herewith enclosing you duplicate invoice for goods shipped by us from here July 8th, to go forward on steamship ' Coya ' from New York on July 15th. We find that the goods went by the ' Coya ' as originally intended, and awaiting your further favors, we are

"Yours very truly,
                    " FELS & Co."

The last letter, which was directed to W. C. Hickox & Co., was answered as follows:

                    " CHICAGO, Aug. 29, 1893.
" MESSRS. FELS & Co., 1151 N. 3rd St., Philadelphia, Pa.
" GENTLEMEN : We are in receipt of yours of the 18th inclosing duplicate invoice of goods shipped to T. Elliott Rourke, Valparaiso, Chili.

" These goods you say you found went forward on the S. S. ' Coya,' as originally intended. This shows by your bill of lading, we suppose, forwarded you by your agents in New York.

" Trusting this shipment will be the means of future orders, we remain

"Yours very truly,
        " HICKOX & READ PUB. CO.,
                    " W. C. Hickox,
                        " Pres. & Treas."

Appellees received a letter from J. Parker Read, vice-president of the Hickox & Read Publishing Co., of date August 23, 1893, acknowledging the receipt of the bill of lading of the goods shipped on Rourke's order. The goods were shipped July 8, 1893, and a draft for the amount of the bill, $526.07, was drawn by appellees July 12, 1893, on their bankers, chargeable to the account of T. Elliott Rourke, which, by Rourke's instructions, was sent to Banco De Valparaiso and was accepted by Rourke August 29, 1893, but never paid, and after several months was returned to appellees. December 13, 1893, Read wrote to appellees, informing them that Rourke had not been able to meet the draft, but would remit within a few weeks. Appellees, on receiving Read's letter, wrote to appellants under date of January 23, 1894, informing them of Read's letter, and saying : " This account was guaranteed by your house, and we must ask that you send us a check for it." The appellants answered as follows :

" Chicago, Jan. 26th, 1894.
" Messrs. Fels & Co., Philadelphia, Pa.

" Gentlemen : We are in receipt of yours of the 23rd inst., and in reference to the goods shipped to T. Elliott Rourke under our guarantee. In reply would say, that if the draft is not paid, it should be returned with the invoice and B. L. to which it was attached and which controls the goods. The papers attached to the draft go with the draft. If Mr. Rourke pays the draft he is entitled to the B. L. controlling the goods, we guaranteeing payment of draft. Return the draft with papers attached and we will take up the same as per our guaranty. If the bank has not returned the papers we will take it for granted that your bankers believe Mr. Rourke will pay the draft, otherwise they should have returned same to you, the same as you send out a draft in this country; if it is not paid, it should be returned. Exchange in that country is very bad, and that undoubtedly is the cause of the goods being left in the Custom House. Their money has been so reduced that it is worth only twenty-five cents on the dollar; therefore hard for him to dispose of the goods; but as we have said, if he does not pay the draft, return same to us with papers attached and we will take up the same.

"Trusting that he will not keep you waiting much longer, we remain

"Very truly yours,

"W. C. HICKOX & Co."

In letters written by appellants to appellees of dates, respectively, February 1st and February 14, 1894, appellants admit the guaranty. In the former letter they say: "Now we guaranteed the payment of that draft, which was a sixty day sight draft;" in the latter letter they use the words, "under our guaranty." There was other correspondence between the parties, which we deem it unnecessary to refer to in this place. The bill for the goods shipped on Rourke's order has never been paid.

Appellants object that the deposition of Samuel S. Fels should have been suppressed for the alleged reason that no notice was given of the proposed taking of the deposition, as prescribed by the statute. The statute requires that ten days notice shall be given to the adverse party or his attorney. E. A. Sherburne was the attorney of record for appellants, and filed for them a plea of the general issue. The record shows, and appellant W. C. Hickox, in his affidavit in support of appellants' motion to suppress the deposition, says that Sherburne continued to be appellants' attorney from January 18, 1898, until May 27, 1898, when H. Gansbergen was substituted for Sherburne by leave of the court. The record shows that such substitution occurred at the last mentioned date. The notice was served on Mr. Sherburne January 19, 1898, by exhibiting to him the original notice and giving him a copy thereof. No objection is made to the form or substance of the notice. Mr. Sherburne, when the notice was served on him, wrote on the back of it these words: "I am not the attorney of the defendant any longer. Mr. James Frake is the attorney for defendant." Thus Mr. Sherburne attempted to withdraw from the case without the consent of his clients, as shown by the affidavit of W. C. Hickox, and without the consent of the court, as shown by the record. This he could not legally do. United States v. Curry, 6 Howard, 106; Mumford v. Murray, 1 Hopkins, 369; C. P. Stock Exchange v. McClaughry, 50 Ill. App. 358.

After service made on Sherburne, appellees' attorneys, out of abundant caution, served the notice on Mr. Frake, who was not the attorney of record, and who W. C. Hickox swears was not authorized to accept service for appellants.

The motion to suppress the deposition of Samuel S. Fels was properly overruled.

The remaining contentions of appellants' counsel are, that there is no evidence that Donnell had authority to contract for appellants; that the contract shows a mere offer of guaranty, and there is no evidence that it was accepted, and that the contract had expired before Rourke's order was forwarded to appellees. We are of opinion that the evidence is ample to support a finding that the contract was authorized by appellants, and that the guaranty was accepted, relied on and acted on by appellees. Appellees, in their letter of December 21, 1893, enclosing to appellants the invoice of the sample soaps, say: "The arrangement for forwarding these goods was made with Mr. Donnell, of the Hickox & Read Publishing Co., and the understanding was that you were to guarantee the bills." This letter was addressed to and received by Hickox & Co. December 23, 1892, Hickox & Co. answered appellees' letter, saying: "All orders sent you, either through the Hickox & Read Pub. Co. or W. C. Hickox & Co., will be guaranteed by us." This letter was signed "Hickox & Read Pub. Co., W. C. Hickox, Pres. & Treas.," but the evidence of W. C. Hickox is that it was signed by him and either written or dictated by him.

We have pointed out other instances in which Hickox & Co. signed answers to letters addressed to them, in the name of "Hickox & Read Pub. Co." Indeed the business of the firm of Hickox & Co. and that of the Hickox & Read Publishing Co. seems to have been so closely identified that it was regarded by appellants as a matter of indifference whether letters were written by them in their firm name or in the name of the Hickox & Read Publishing Co. That company seems to have been appellants' agent to procure orders on manufacturers on which, when filled and paid for,

appellants could obtain commissions.   The answer of December 23d to appellees' letter of December 21st, not only does not question the authority of Donnell to contract for appellants, but, as we think, recognizes it.   But it is immaterial whether the contract was authorized prior to its execution or subsequently ratified.   If appellants could authorize it in the first instance, which they clearly could, they could ratify it, and the evidence is abundant that they ratified it. In questioning the guaranty, appellants' counsel goes further than do appellants themselves.   They do not deny the guaranty.   The following occurred in the examination of appellant W. C. Hickox:

Q.   "How did you come to be writing this Fels & Co. about this bill or promising to pay it?"

A.   "In regard to promising to pay it?"

Q.   "Yes."   A.   "Why, there was the correspondence —we sent them an order, and if they had followed our instructions, any goods that were not paid for, we would take up the draft with bill of lading attached."

Q.   "Will you deny guaranteeing the bill?"   A.   "We denied we guaranteed the bill unless they shipped according to the instructions or rules for shipping to that country. Now we guaranteed any goods that went to South America, and draft attached to bill of lading.   If the draft was not paid, they were at liberty to return the draft and bill of lading to us and we would pay the bill, and reimburse ourselves from the goods themselves."

There is no evidence that any such instructions as referred to by the witness were given to appellees.   The evidence is that appellees followed all instructions given them.   It is not necessary that there should be a formal express acceptance of a guaranty.   In Reynolds v. Douglas, 12 Peters, 497, 504, cited with approval in Ruffner v. Love, 33 Ill. App. 601, the court, speaking of notice of acceptance of a guaranty, say:

"This notice need not be proved to have been given in writing, or in any particular form, but may be inferred by the jury from facts and circumstances which will warrant such inference."

We think it clear that appellants, as business men, must

have known from appellees' letter of December 21, 1892, enclosing invoice of goods shipped under the contract, and expressly stating the understanding was that appellants were to guarantee the bills, that the guaranty was accepted and relied on by appellees. If appellees did not accept and rely on the guaranty, why did they enclose the bill of the goods to the appellants, and demand payment of it?

From the letter of December 21, 1892, acceptance of the guaranty may reasonably be inferred. The contention that Rourke's order was not within the contract is untenable. The language of the contract is:

"All orders of goods to be sent to the party of the first part through W. C. Hickox & Co., Chicago, Illinois, and due payment of same is guaranteed by W. C. Hickox & Co." * * * "This agreement to continue for the term of six months, renewable if satisfactory, at the option of both parties, for a further time."

The agreement is not dated, but both parties fix the date of its execution as December 16, 1892. Appellee Samuel S. Fels so fixes it by referring to the time of the first shipment of goods, and also by the letter of December 19, 1892. Appellants fix it by their letter of February 24, 1893, in answer to a letter from appellees, demanding payment for the sample soap. In that letter appellants write:

"We think your bookkeeper has overlooked the contract in regard to this matter, as same is not due until the 16th of June, as per terms of contract."

The part of the contract in relation to the sample soaps referred to in appellants' letter is:

"Said goods to be charged to party of the second part and paid for, unless orders for $500 worth of goods are sent in and paid for before the expiration of this agreement."

By the terms of the agreement it was to expire in six months. Appellants' letter, therefore, notified appellees, in substance, that it could not be determined before June 16th, whether appellants would be liable for the $100 worth of sample soaps, thus fixing June 16, 1893, as the date of the expiration of the contract, which date is just six months from December 16, 1892. Rourke's order is dated May 19,

1893, and it was enclosed to appellants in a letter from Read to them of date May 30, 1893, to be by appellants forwarded to appellees. The order was sent by appellants to appellees, enclosed in a letter of appellants of date July 1, 1893, in which letter appellants urge speedy shipment of the goods ordered, and request appellees to comply with directions as to boxing and shipping. July 7, 1893, appellants again wrote to appellees, acknowledging receipt of a letter from them of date July 5, 1893, to the effect that the order would be filled and the goods shipped as indicated in appellants' letter of July 1st, and saying they were glad to learn this. August 16, 1893, appellants wrote to appellees, asking them if they had succeeded in shipping the goods, and, if so, requesting a copy of the invoice, saying, " We require this on all shipments guaranteed by us."

Appellees, August 18, 1893, sent to appellants a copy of the invoice as requested. Thus both parties, appellants and appellees, treated Rourke's order as within the contract of December 16, 1892, and within appellants' guaranty. In this we think they were correct. The order, as before stated, was dated May 19, 1893. Read was then in Chili, and it is a reasonable presumption that the order was given to him by Rourke the day of its date. At any rate, Read had it in his possession May 30th, so that it was given within the term of the contract. If the contract had been that the order should be by mailed letter, then the instant that a letter, enclosing the order to appellees, was mailed, would be the date of giving the order; it would be deemed given when mailed. 1 Parsons on Contracts, 483, *et sequens.*

But the contract was that it should come to appellees through Hickox & Co., and it was delivered by Rourke to Read, who, we think, must, in view of the evidence, be regarded as appellants' agent in Chili, on or before May 30, 1893. It was thus made and delivered to appellants within the time fixed by the contract. Appellants, instead of the mail, being the medium of delivery of the order to appellees, when the order was delivered to appellants, by delivery to their agent, it was, as in the case of a letter mailed,

an order on appellees at the time of such delivery, and sent to appellees within the meaning of the agreement of December 16, 1892.

Counsel for appellants object to certain questions of the court to W. C. Hickox, a witness for appellants. The abstract shows no exceptions to such questions, which is sufficient to dispose of the objection.

The judgment will be affirmed.