Argued May 2, decided June 14, motion to retax costs decided Sept. 13, 1910.

## DeVALL v. DeVALL.

[109 Pac. 755: 110 Pac. 705.]

JUDGMENT—FOREIGN JUDGMENTS—EFFECT—ENFORCEMENT.

1. Under Section 750, B. & C. Comp., providing that the effect of a judicial record of a sister state is the same in Oregon as in the state where made, except that it can only be enforced by an action, a memorandum of a judgment of a sister state cannot, by being recorded under a lien docket in Oregon, become an incumbrance on real property therein or authorize an execution based on such entry.

JUDGMENT—FOREIGN JUDGMENT—FAITH AND CREDIT.

2. The full faith and credit clause of the federal constitution (Section 1, Article IV, Constitution) and Rev. St. § 905 (U. S. Comp. St. 1901, p. 677) passed in conformity therewith, merely establish a rule of evidence, and do not fix a criterion of jurisdiction.

COURTS—DECISIONS OF FEDERAL SUPREME COURT—CONCLUSIVENESS.

3. The construction of the full faith and credit clause of the federal constitution involves a federal question, and its interpretation by the federal Supreme Court is controlling.

JUDGMENT—FOREIGN JUDGMENT—CONCLUSIVENESS.

4. Neither the full faith and credit clause of the federal constitution (Section 1, Article IV, Constitution) nor Rev. St. § 905 (U. S. Comp. St. 1901, p. 677), passed in conformity therewith, prevents an inquiry into the jurisdiction of the court of a sister state by which a judgment rendered therein is offered in evidence and a copy of the record, though duly authenticated, may be contradicted as to the facts necessary to give jurisdiction, or where it appears in a collateral proceeding in another state that such facts did not exist, the record is a nullity, though it may contain recitals that the facts did exist.

JUDGMENT—FOREIGN JUDGMENT—ACTIONS—EVIDENCE.

5. The decree of proof required in an action on a foreign judgment is governed by the rules or pleading prevailing where the action is brought,

except that the procedure in such state cannot impair the efficacy of the judgment of a sister state, or deny an adequate remedy for its enforcement.

JUDGMENT—FOREIGN JUDGMENT—ACTIONS—PLEADINGS.

6. Notwithstanding Section 87, B. C. Comp., providing that in pleading a judgment of a court of special power it is not necessary to allege the facts conferring jurisdiction, a party who in alleging a judgment of a subordinate tribunal of a sister state elects to set forth the facts conferring power to hear and determine the case, must state all the facts necessary to give jurisdiction.

DIVORCE—ALIMONY—STATUTORY POWER.

7. The power to award permanent alimony on granting a divorce is statutory.

EVIDENCE—LAWS OF OTHER STATES.

8. Where the decisions of the Supreme Court of a sister state construing a statute thereof are not offered in evidence, the court will examine such decisions only so far as they interpret the rules of the common law existing in the sister state, independently of the statutes.

COURTS—JURISDICTION—RECORD.

9. A court of general jurisdiction which takes cognizance of a cause pursuant to statutory authority and not in conformity with the common law, becomes an inferior court and its proceedings are subject to all the incidents applicable to an inferior court, so that its record must affirmatively show that jurisdiction of the person against whom a judgment was rendered, was secured in the manner prescribed in order that the judgment shall not be open to attack, as no presumptions can be invoked to supply any omissions.

EVIDENCE—LAWS OF OTHER STATES—PRESUMPTIONS.

10. In the absence of any showing to the contrary the court will assume that the common law rules in force in Oregon are in force in a sister state.

EVIDENCE—JUDICIAL NOTICE—LAWS OF OTHER STATES.

11. The court will not take judicial notice of the statutes of a sister state, and a party relying thereon must plead and prove them.

ATTORNEY AND CLIENT—RELATION—STATUTES.

12. Section 1058, B. & C. Comp., defining the authority of an attorney, recognizes the common-law authority of an attorney to represent his client long enough after an entry of judgment in his client's favor to enable him to supervise the collection thereof, by authorizing an attorney at any time within three years after the entry of judgment to acknowledge satisfaction thereof on receiving the sum adjudged to be due his client.

ATTORNEY AND CLIENT—RELATION.

13. Where an attorney has appeared in an action for a party who is defeated, the entry of the judgment therein concludes his relation to the cause.

DIVORCE—FOREIGN JUDGMENT—VALIDITY.

14. Under St. Wisconsin 1898, Section 2420, conferring on the circuit courts the powers, according to the usages of law and equity, necessary to complete jurisdiction of causes and parties, and Sections 2348, 2362, 2364, 2367, 2369, 2823, giving the circuit court jurisdiction of

Sig. 5

actions for divorce with power to award the wife alimony and allowance for the maintenance of the children of the parties, and authorizing the court from time to time to alter the judgment as to alimony or allowance and the payment thereof, and providing that when a party to an action shall have appeared by an attorney the service of papers shall be made on the attorney, a decree of divorce is conclusive as to the severance of the marriage tie, but is not final as to the award of alimony or the allowance for the maintenance of the children as to which the authority of the attorney continues, empowering him, in the absence of any notice of retirement or substitution, to apply to the court for a reduction of the alimony or allowance, and to resist any request by plaintiff for an increase thereof, and a judgment for arrears of alimony rendered on service of notice of the application on defendant's attorney is valid and will be enforced in Oregon.

ATTORNEY AND CLIENT—RELATION OF PARTIES—NOTICE OF RETIREMENT.
15. An attorney of record must notify the attorney of the adverse party of his retirement from a cause, and until he does so the service of any notice in the action on him is effectual, and in the absence of such notice or order of substitution it cannot be said that such attorney is not empowered to represent his client.

ATTORNEY AND CLIENT—RELATION OF PARTIES.
16. A contract of a firm of attorneys to represent a client in a litigation is joint, requiring each member of the firm to perform such services as are required, and continues until the conclusion of the cause, unless sooner determined, and the fact that one of the attorneys of the firm permanently removes from the state does not prevent the remaining partner from continuing in the employment, and the adverse party may treat the remaining attorney as the attorney, so that service of notice on him is tantamount to a personal service on the client, under a statute providing that when a party shall have appeared by an attorney, the service of papers shall be made on the attorney.

DIVORCE—JUDGMENT—VALIDITY.
17. Under St. Wisconsin 1898, Sections 2367, 2369, authorizing the court awarding alimony to enforce payment thereof by execution or otherwise, and providing that after an award of alimony the court may revise the same and make a new determination, the court has plenary power to determine the amount of alimony in arrears and render judgment for that sum, and enforce payment thereof by execution.

DIVORCE—ALIMONY—POWER OF COURT.
18. The authority to grant divorce and award alimony, though statutory, carries with it such powers as are expressly given and such as may necessarily be incidental to its exercise.

EXECUTION—ENFORCEMENT.
19. Under the statutes authorizing courts of equity to issue executions a decree, to be enforceable by execution, must contain the positive constituents of a judgment at common law, and direct the payment of a sum of money by one party to another.

JUDGMENT—FOREIGN JUDGMENT—ACTIONS.
20. An action at law lies for the recovery of money based on a decree of a court of equity of a sister state.

COSTS—ON APPEAL—STENOGRAPHER'S FEES.
21. In a legal action, money paid by a party to the official stenographer as legal fees must be taxed in the trial court, and cannot be entered on appeal as disbursements.

COSTS—DISPOSITION ON APPEAL—EXPENSE OF BILL OF EXCEPTIONS.

22. Where a transcript of the testimony is filed below, appellant, in order to review the judgment, must prepare a bill of exceptions, and expenses incident to the clerical work are not a part of the disbursements on appeal.

APPEAL AND ERROR—COSTS.

23. Only such legal charges as have been paid or promised to be paid to the clerk for preparing a transcript on appeal may be recovered as a disbursement, so that expenses saved by plaintiff's counsel himself preparing the appeal transcript inured to the benefit of the other party upon reversal.

From Wallowa: JOHN W. KNOWLES, Judge.

Statement by MR. CHIEF JUSTICE MOORE.

This action was brought in the circuit court for Wallowa County by Beatrice De Vall against Thomas De Vall, to recover a sum of money determined to be due her by a trial court of another state. It appears that by consideration of the circuit court of Lincoln County, Wisconsin, in a suit brought for that purpose in which the defendant herein was defendant and appeared in person and by an attorney, a decree was passed October 1, 1895, granting to the plaintiff herein, who was plaintiff in that suit, a divorce *a vinculo,* giving to her the custody of four minor children, and awarding her $10 a month for their education and maintenance and for her support. The decree provided, however, that it was not absolute either as to the custody of the children, or in respect to the amount to be paid to the plaintiff for her support, or their maintenance and education. That court on October 9, 1897, upon plaintiff's application therefor and the defendant's appearance in person and by an attorney, directed that, until further ordered, the award so made be increased to $18 a month. The last command not having been fully obeyed, the plaintiff petitioned that court for a recovery of the sum of money in arrears, alleging that on April 1, 1907, it was $1,008. Notice of the application was served upon M. C. Porter, an attorney, who later filed an affidavit disclaiming any authority further to act for the defendant. The record of that

court recites, substantially, that Porter was a member of the firm of Flett & Porter, who were officers of the court and at all times had been the attorneys of record for the defendant in the divorce suit, and that no other attorneys had been substituted for them. Based on such notice that court on October 8, 1907, determined that the defendant pay to the plaintiff $1,008, the amount remaining due April 1, 1907, and that she have execution therefor.

The complaint herein alleges that the Wisconsin court is one of general jurisdiction over matters in equity and at law; sets out the proceedings hereinbefore mentioned; avers that the defendant has not paid the sum of $1,008 or any part thereof; and that by virtue of the Wisconsin statute of 1898, chapter 109, such adjudication is final and has the force and effect of a judgment at law for the recovery of money. Allusion is then made to certain sections of that statute, copies of which are attached as an exhibit. The prayer demands judgment for the sum so determined by the Wisconsin court with interest thereon from April 1, 1907, at six per cent per annum, and for the costs and disbursements of this action.

The answer denies the averments of the complaint and alleges that about June 12, 1901, the defendant became a resident of Wallowa County, Oregon, where he has ever since resided; that he never thereafter had been within the state of Wisconsin; that in the year 1902, the partnership mentioned in the complaint was dissolved, and W. H. Flett, who had been a member thereof, removed to Seattle, Washington, where he has since resided; that after the issuance of the order for the payment of $18 a month, neither M. C. Porter nor any other attorney has had authority to appear for or represent the defendant in any court in Wisconsin; that the defendant has not, since that time, been served with, or admitted the service of, any notice or process issued from any such court, nor has

he appeared in any manner therein; and that if any judgment or decree has been rendered against him since October 9, 1897, by such court, it was without jurisdiction of his person.

The reply having put in issue the allegations of new matter in the answer, the cause was tried, resulting in a judgment for the defendant, and the plaintiff appeals.

REVERSED.

For appellant there was a brief over the names of *Mr. John P. Rusk* and *Mr. Thomas M. Dill*, with an oral argument by *Mr. Dill*.

For respondent there was a brief and an oral argument by *Mr. A. S. Cooley*.

Opinion by MR. CHIEF JUSTICE MOORE.

1. Full faith and credit is required to be given in each state to the judicial proceedings of every other state, and Congress is empowered to prescribe the manner in which the actions of such tribunals shall be proved and the effect thereof. Section 1, Article IV, Constitution of United States. Pursuant to this authorization, the manner of authenicating judicial records has been ordained, and it is declared that when attested as prescribed, such enrollments shall be given the degree of faith and credit in every court within the United States that they have in the tribunals from which they are taken. Rev. St. § 905 (U. S. Comp. St. 1901, p. 677). Our statute reiterates this rule but asserts that a judgment of another state can only be enforced in Oregon by an action, suit, or proceeding. Section 750, B. & C. Comp. It will thus be seen that a memorandum of judgment of a sister state cannot, by being recorded in a lien docket in Oregon, become an incumbrance on real property therein or authorize the issuance of an execution based on such mere entry, but the enactments referred to make a valid judgment of another state such an obligation that when a copy thereof

is properly authenticated it may afford the foundation
of an independent action in a sister state: *Cole* v. *Cunningham*, 133 U. S. 107, 112 (10 Sup. Ct. 269: 33 L. Ed.
538).

2. The full faith and credit clause of the organic law
of the United States and the act of Congress passed in
conformity therewith (Section 1, Article IV, Constitution
United States and Rev. St. Section 905, U. S. Comp. St.
1901, p. 677) serve to establish a rule of evidence, rather
than to fix a criterion of jurisdiction: *Wisconsin* v. *Pelican Ins. Co.*, 127 U. S. 265, 291 (8 Sup. Ct. 1370: 32
L. Ed. 239).

3. As the construction of the full faith and credit
clause of the federal constitution involves a federal question, its interpretation by the Supreme Court of the
United States is controlling: *Brigham* v. *Henderson*, 1
Cush. (Mass.) 430 (48 Am. Dec. 610).

4. In an action of debt, brought in the circuit court
for the District of Columbia, upon a judgment of the
Supreme Court of New York, a plea of *nil debet* was
interposed and it was on general demurrer determined
to be ineffectual, a majority of the Supreme Court of the
United States intimating that the full faith and credit
clause of the constitution of the general government contemplated a power in Congress to give a conclusive effect
to a duly authenticated judgment of another state: *Mills*
v. *Duryee*, 7 Cranch, 481, 484 (3 L. Ed. 411). In that
case Mr. Justice JOHNSTON, fearing that the implied
acceptance in all cases or a plea of *nul tiel* record, as
the only defense available in such an action, might at
some future time be understood to preclude all inquiry
into the jurisdiction of the court giving the judgment,
dissented on the ground that the power of judicial tribunals to hear and determine causes, could not be exercised over property not within reach of their process,
or over persons not owing them allegiance, or not subject
to their jurisdiction by being found within their limits.

The only question involved in that case was the sufficiency of the plea of *nil debet* in an action of debt based on a judgment of another state, and hence the inquiry of jurisdiction was not included, and any discussion of the matter was extrajudicial. The doctrine promulgated by the majority of the court in that case was reannounced in another opinion: *Hampton* v. *McConnel,* 3 Wheat. 234 (4 L. Ed. 378). In explaining the irrefutable character of the adjudication by a court of another state, it was subsequently held that in the two cases last cited, it was meant by the conclusiveness of the judgment that the determination of the causes related to a decision on the merits only, to which full faith and credit was required to be given: *McElmoyle* v. *Cohen,* 13 Pet. 312, 326 10 L. Ed. 177). Any doubt on this subject was finally put at rest by a later opinion stating that neither the full faith and credit clause spoken of nor the act of Congress mentioned prevented an inquiry into the jurisdiction of the court of a sister state by which a judgment rendered therein was offered in evidence, and that a copy of such record, though duly authenticated, might be contradicted as to the facts necessary to give the court rendering the judgment power to hear and determine the cause, or if it appeared in a collateral proceeding in another state, that such facts did not exist, the record would be a nullity, notwithstanding it might contain recitals that they did exist. *Thompson* v. *Whitman,* 18 Wall. 457, 469 (21 L. Ed. 897.) To the same effect see also: *Public Works* v. *Columbia College,* 17 Wall. 521, 528 (21 L. Ed. 687) ; *Christmas* v. *Russell,* 5 Wall. 290. 305 (18 L. Ed. 475) ; *Cole* v. *Cunningham,* 133 U. S. 107, 112 (10 Sup Ct. 269: 33 L. Ed. 538) ; *Grover & Baker Sewing Machine Co.* v. *Radcliffe,* 137 U. S. 287, 294 (11 Sup. Ct. 92: 34 L. Ed. 670) ; *Simmons* v. *Saul,* 138 U. S. 439, 448 (11 Sup. Ct. 369: 34 L. Ed. 1054.) The legal principle thus announced has been recognized by this court: *Foshier* v. *Narver,* 24 Or. 441, 443 (34 Pac. 21: 41 Am. St. Rep. 874.)

5. The full faith and credit clause of the Constitution of the United States and the resultant federal legislation having been held by the highest judicial tribunal of the general government to be a rule of evidence, and the degree of proof thereof regulated, an action founded on a judgment of a sister state must be governed by the rules of pleading prevailing where such action is brought: *Napier* v. *Gidiere,* Spears' Eq. (S. C.) 215 (40 Am. Dec. 613, 616.) This declaration must be accepted with the qualification, however, that the procedure obtaining in the latter state cannot impair the efficacy of a judgment of a sister state, or deny an adequate remedy for its enforcement.

6. The rule is settled in this State that in pleading a judgment of a court of special power to hear and determine causes it is not necessary to allege the facts conferring jurisdiction, but it may be averred that such judgment was duly given or made: Section 87, B. & C. Comp.; *Fisher* v. *Kelly,* 30 Or. 1, 11 (46 Pac. 146) ; *Rutenic* v. *Hamaker,* 40 Or. 444, 450 (67 Pac. 196) ; *Ashley* v. *Pick,* 53 Or. 410, 414 (100 Pac. 1103.) When, however, a party alleging a judgment of a subordinate tribunal elects to set forth the facts conferring power to hear and determine a cause, the pleading must be complete in this respect and state all the facts necessary to give jurisdiction: *Fishburn* v. *Londershausen,* 50 Or. 363, 373 (92 Pac. 1060: 14 L. R. A. (N. S.) 1224.) It will be remembered that the complaint herein avers that the court in Wisconsin which rendered the judgment was a tribunal having general jurisdiction over causes in equity and at law, and sets forth certain sections of the statutes of that state relating to the granting of divorces and to the bestowing of alimony.

7. The principle prevails in this State that the awarding of permanent alimony on granting a dissolution of the marriage contract must be found in the statute conferring

the right: *Northcut* v. *Lemery*, 8 Or. 316, 323; *Weber* v. *Weber*, 16 Or. 163, 164 (17 Pac. 866) ; *Huffman* v. *Huffman*, 47 Or. 610, 615 (86 Pac. 593: 114 Am. St. Rep. 943). The same rule obtains in Wisconsin: *Barker* v. *Dayton*, 28 Wis. 367, 379; *Hopkins* v. *Hopkins*, 39 Wis. 167, 171; *Bacon* v. *Bacon*, 43 Wis. 197, 202.

8. The decisions of the court of last resort in Wisconsin, on the subject under consideration, were not offered in evidence and hence they have been examined only so far as they interpret the rules of the common law existing in that state, independently of its statutes: *Kelley* v. *Kelley*, 161 Mass. 111 (36 N. E. 837: 25 L. R. A. 806, 808: 42 Am. St. Rep. 389.)

9. When a court of general jurisdiction takes cognizance of a cause pursuant to statutory authority and not in conformity with the principles of the common law, such tribunal becomes an inferior court, and its proceedings in such cases are subject to all the incidents applicable to a court of that kind, and, in order that its adjudications may be invulnerable to attack, its record must affirmatively show that jurisdiction of the person against whom the judgment was rendered, was secured in the manner prescribed, for no presumptions can be invoked to supply any omissions in this particular: *Heatherly* v. *Hadley*, 4 Or. 1, 14; *Odell* v. *Campbell*, 9 Or. 298, 300; *In re Goldsmith*, 12 Or. 414, 417 (7 Pac. 97: 9 Pac. 565) ; *Furgeson* v. *Jones*, 17 Or. 204, 212 (20 Pac. 842: 3 L. R. A. 620: 11 Am. St. Rep. 808) ; *White* v. *Espey*, 21 Or. 328, 331 (28 Pac. 71.)

10. As this legal principle is a well-recognized rule of the common law predominating in Oregon, which, in the absence of any showing to the contrary, we shall assume is in force in Wisconsin: *Kelley* v. *Kelley*, 161 Mass. 111 (36 N. E. 837: 25 L. R. A. 806, 807: 42 Am. St. Rep. 389.)

11. The plaintiff properly set forth, as parts of the complaint, copies of sections of the statute of that state

relating to divorce, to alimony, and to the manner of securing jurisdiction of the person in certain instances, for a court will not take judicial notice of the statutes of another state, thereby making averment and proof thereof requisite: *Goodwin* v. *Morris*, 9 Or. 322, 324; *Cressey* v. *Tatom*, 9 Or. 541, 545; *Scott* v. *Ford*, 52 Or. 288, 294 (97 Pac. 99) ; *Young* v. *Young*, 53 Or. 365, 366 (100 Pac. 656.)

The judgment of the Wisconsin court having been authenticated in the manner prescribed, the sections of the statute referred to will be examined, the substance thereof noted and quotations therefrom made, in order to determine what faith and credit would have been given to such adjudication in the state in which it was rendered. The circuit court of that state has jurisdiction of all actions for a divorce: St. Wis. 1898, § 2348. In rendering a judgment for divorce the court may make such further provisions therein as it shall deem just and proper concerning the care, custody, maintenance, and education of the minor children of the parties: St. Wis. § 2362. Upon every divorce, for any cause excepting that of adultery committed by the wife, the court may further adjudge to the wife such alimony for her support and maintenance and such allowance for the support, maintenance, and education of the minor children committed to her care and custody, as it shall deem just and reasonable: St. Wis. § 2364. In all cases where alimony or other allowance shall be adjudged to the wife or for the maintenance or education of the children, the court may provide that the same shall be paid in such sums and at such times as shall be deemed expedient, and may impose the same as a charge upon specific real estate of the party liable, or may require sufficient security to be given for the payment thereof, and upon neglect or refusal to give such security or failure to pay such alimony or allowance, the court may enforce the payment thereof by executions or otherwise, as in other cases: St. Wis. § 2367. After

judgment providing for alimony or other allowance for the wife and children, the court may from time to time, on petition of either of the parties, revise and alter such judgment respecting the amount of such alimony or allowance and the payment thereof, and may make any judgment respecting any of the said matters which such court might have made in the original action: St. Wis. § 2369.

The circuit courts have power to hear and determine, within their respective counties, all civil actions and proceedings; and they have all the powers, according to the usages of courts of law and equity, necessary to the full and complete jurisdiction of the cause and parties, and the full and complete administration of justice, and to the carrying into effect their judgments, orders, and other determinations, subject to re-examination by the Supreme Court, as provided by law: St. Wis. § 2420. "When a party to an action or proceeding shall have appeared by an attorney the service of papers shall be made upon the attorney." St. Wis. § 2823. "A voluntary appearance of a defendant is equivalent to a personal service of the summons upon him." St. Wis. § 2643.

The plaintiff's counsel, relying on these statutory provisions, contend that jurisdiction of the person of the defendant was secured by the court in Wisconsin in the manner prescribed; that the judgment for the sum of $1,008 is final, and such being the case an error was committed in directing a verdict for the defendant. The latter's counsel deny such assertions and maintain that the statute of Wisconsin does not authorize the rendering of a judgment for arrears of alimony.

It will be borne in mind that 10 years after the change was made in the order of allowance, judgment for arrears thereof was given, based on the service of notice to an attorney whose firm had represented the defendant in all the prior proceedings in the suit, but which partnership

had been dissolved, one member thereof going to the State of Washington, and the other disclaiming any authority further to appear for such client, but that no other attorney had been substituted for them.

12. An examination ·of the relation existing between attorney and client and the termination of that connection becomes necessary, in order to ascertain whether or not the judgment of the Wisconsin court was personal, and hence may become the foundation of an action in Oregon. At common law an attorney's authority to represent his client usually continued a sufficient length of time after an entry of the judgment to enable him to supervise the collecting of the fruit thereof, in case he‑was successful in the action: Weeks, Attys. (2 ed.) § 249a. The statute of Oregon recognizes this ancient rule by authorizing an attorney, at any time within three years after the entry of a judgment or decree, to acknowledge satisfaction thereof upon receiving the sum so adjudged to be due his client: Section 1058, subd. 2, B. & C. Comp.

13. So, too, in Wisconsin it was held that the relation of an attorney who had appeared in a cause did not terminate with the rendition of the judgment, but that pursuant to a statute of that state, he was authorized at any time within two years after a judgment had been enrolled to enter satisfaction thereof on the record: *Flanders* v. *Sherman*, 18 Wis. 575. Where, however, an attorney has appeared in an action for a party who is defeated, the entry of the judgment therein always concludes his relation to the cause: 3 Am. & Eng. Ency. Law (2 ed.) 330. The limits thus prescribed by the principles of the common law are considered appropriate and such as necessity demands.

14. The decree of the Wisconsin court was conclusive as to the severance of the marriage tie, but it was not final as to the award of alimony or for the maintenance and education of the minor children, in respect to which

the authority of the defendant's attorneys who had represented him in the divorce proceedings continued, empowering them, in the absence of any notice of retirement or substitution, to apply to that court for a reduction in, or a remission of, the sum of money directed to be paid monthly, and to resist any request by the plaintiff for an increase thereof. The conclusion thus reached is based on the principle that when a court has acquired full jurisdiction of a cause, its power to hear and determine the matter at issue continues until the case is finally determined, though the exercise of its jurisdiction may for a time be suspended it is never abandoned, and when resumed its action is within the limits of its power, and not vulnerable to collateral attack: Black, Judg. § 912; 11 Cyc. 690.

It is possible that a husband who is required by a Wisconsin court, on granting a divorce, to contribute to the support of his children or to that of their mother, might have no real property in that state which could be burdened with a decretal lien, and he might be unable to secure the payment of any definite sum in gross, awarded for that purpose (St. Wis. 1898, § 2367), but upon being required to pay a monthly or other periodical stipend he could, from his wages, comply with the terms of the order. If, under the circumstances supposed, a party who was required to make regularly recurring payments could depart from Wisconsin, leaving no person authorized to represent him, and remove to another state, he might avoid the obligation which the marital relation requires and the parental duty enjoins, and thus escape the liability which the court imposes. To prevent the possibility of such apprehended evasion of legal obligations, the statute of the state where the judgment was given authorizes the service of papers upon the attorney who has appeared for a party to an action: St. Wis. 1898, § 2823.

15. It is the duty of an attorney of record to notify the attorney for the adverse party of his retirement from a

cause, and, until he does so, the service of notice upon him is effectual: *Boyd* v. *Stone*, 5 Wis. 240, 244. In the absence of such notice or order of substitution, when it appears from the record that certain attorneys have been acting for a party all through a cause and so recognized, it cannot be said that they are not empowered to represent him: *Hoppin* v. *First Nat. Bank*, 25 Nev. 84, 90 (56 Pac. 1121.)    The better rule would seem to be that where an order has been made, requiring the payment of permanent alimony or maintenance in installments, the attorney who has represented the party commanded to make such contributions should not be permitted to withdraw from a case after the divorce has been granted, without leave of court, and its consent ought not then to be given until another attorney had been substituted.    By pursuing the practice suggested, when the statute, as in Wisconsin, permits the service of a notice upon an attorney who has appeared for a party, an allowance of alimony, if not paid as required, may become a personal judgment for the arrears thereof against such party, and they form the basis of an action in another state.    The procedure thus indicated is not novel. for it has been held that after an attorney's name has been entered of record, as the representative of a party to a cause, he cannot withdraw his appearance without the consent of the court: *United States* v. *Curry*, 6 How. 106, 111 (12 L. Ed. 363) ; *Hickox* v. *Fels*, 86 Ill. App. 216, 224.

16. It will be recalled that Flett & Porter, as partners, represented the defendant at the trial of the divorce case and also when the alteration was made in the monthly allowance for maintenance, and that the firm was thereafter dissolved, Flett removing to the State of Washington.    These attorneys having, as copartners, accepted from the defendant a retainer, their contract with him was joint, requiring of each the performance of such service as was required, which employment continued

until the ultimate conclusion of the cause, unless sooner determined: Weeks, Attys. (2 ed.) § 244. It is possible that Flett's control of the case terminated by his permanent removal from Wisconsin (*Chautauqua County Bank v. Risley,* 6 Hill [N. Y.] 375), but however this may be, Porter's authority continued, and no notice of his retirement having been given, the plaintiff had the right, under the provisions of the statute hereinbefore quoted, to treat him as still representing the defendant, and the service of the notice upon such attorney was tantamount to a personal service of process upon the client. In reaching this conclusion it must not be forgotten that the defendant appeared in person and by an attorney when the original award of $10 a month for alimony and maintenance was made, and also when such allowance was increased to $18 a month.

17. The remaining questions are whether or not the Wisconsin court was empowered to ascertain the amount of the allowance in arrears, and, if so, is its determination thereof final, and hence enforceable in Oregon? It is maintained by defendant's counsel that the sections of the statute set forth in the complaint do not authorize the establishment of such alleged deficiency, and that as the power to do so must be found in the enactment, no presumption, in the absence of an averment and proof of the statute, should be indulged to support the record.

18. The authority to grant divorces and to award alimony, though conferred upon a court by statute, carries with it such powers as are expressly given and also such as may necessarily be incidental to its exercise: *Erkenbrach v. Erkenbrach,* 96 N. Y. 456, 463; *Walker v. Walker,* 155 N. Y. 77, 80 (49 N. E. 663) ; *Livingston v. Livingston,* 173 N. Y. 377, 380 (66 N. E. 123: 61 L. R. A. 800: 93 Am. St. Rep. 600.) We conclude, therefore, that under Section 2369 of the Wisconsin statute, hereinbefore referred to, which provides, in effect, that after an award of alimony

or allowance has been made, the court may thereafter revise and alter such judgment and make a new determination respecting such matters, which it might have done in the original action, the court of that state possessed plenary power to determine the sum in arrears.

19. In *Campbell* v. *Campbell,* 37 Wis. 206, 217, it was held that the rendering of a judgment for arrears of alimony rested in the discretion of the court awarding it. Giving to that decision the conclusive effect to which it is entitled, as a correct exposition of the rules of the common law, the legal principle announced can have no application to the case at bar, for the discretion referred to was exercised by the Wisconsin court when it pronounced judgment for the sum in arrears. An examination of the statute of Wisconsin (Section 2367) hereinbefore noted will show that upon granting a divorce a court of that state may give alimony, and enforce the payment thereof by execution. A court of equity originally coerced a compliance with the terms of its decree by punishing the party commanded to obey its mandate, but it was powerless to issue an execution for that purpose. Statutes have been enacted, however, authorizing the courts of chancery to issue executions, but in order to do so the decree to be enforced must contain the positive constituents of a judgment at common law and direct the payment of a sum of money by one party to another. Freeman, Execution (2 ed.) § 10. The award made to the plaintiff by the Wisconsin court was as much a debt of record as any other judgment for money that could have been given: *Barber* v. *Barber,* 21 How. 582, 595 (16 L. Ed. 226.) Jurisdiction of the subject-matter and of the person of the defendant was obtained when the allowance of $18 a month was made. The judgment for arrears of such award was, in effect, a determination of what payments had been made on account thereof and how much money remained due thereon. When the execution was directed

to be issued on such judgment, pursuant to the authoriza-
tion of the statute of Wisconsin, the command, in our
opinion, made the determination as to the sum of $1,008

20. A diversity of judicial utterance formerly existed
as to the right to maintain an action at law for the recov-
ery of money based on a decree of a court of equity of
another state, but whatever the rule originally was or
may be in other jurisdictions, it is settled in Oregon that
such an action can be upheld: *Meyer* v. *Brooks,* 29 Or.
203 (44 Pac. 281: 54 Am. St. Rep. 790.)   The principle
thus maintained is supported by. authority.  Black, Judg-
ments, § 962; Freeman, Judgments, (3 ed.) § 434; *How-
ard* v. *Howard,* 15 Mass. 196; *Mutual Fire Ins. Co.* v.
*Newton,* 50 N. J. Law 571 (14 Atl. 756) ; *Evans' Adm'x* v.
*Tatem,* 9 Serg. & R. (Pa.) 252 (11 Am. Dec. 717.)

Believing that an error was committed in directing a
verdict for the defendant, the judgment is reversed and
a new trial ordered.              ·              REVERSED.

Decided September 13, 1910.

ON MOTION TO RETAX COSTS.

[110 Pac. 705.]

*Mr. Thomas M. Dill* for the motion.

*Mr. A. S. Cooley, contra.*

Opinion by MR. CHIEF JUSTICE MOORE.

21. This is a motion to retax costs.  The judgment
herein was reversed, whereupon plaintiff's counsel served
and filed a cost bill, containing *inter alia,* the following
items:  "To stenographer's fee, $9.00; to bill of exceptions
original copy, 120 folios, $12.00; to transcript for
Supreme Court, 234 folios, $23.40."  Our clerk disallowed
these charges, and to review his action in that particular
this motion was interposed.

Considering the several demands in their order, it is settled that in a law action the sums of money paid by a party to the official reporter as his legal fees must be taxed in the lower court and cannot be entered here as a disbursement: *Sommer* v. *Compton,* 53 Or. 341, 344 (100 Pac. 289) ; *McGee* v. *Beckley,* 54 Or. 250, 255 (103 Pac. 61.)

22. When a transcript of the testimony has been filed in the lower court, it is incumbent upon the appellant, if he desires to review the judgment, to prepare a bill of exceptions for settlement and allowance by the judge, and the expenses incident to the clerical work form no part of the disbursements on appeal: *Ferguson* v. *Byers,* 40 Or. 468, 477 (67 Pac. 1115: 69 Pac. 32) ; *Allen* v. *Standard Box & Lumber Co.,* 53 Or. 10, 19 (96 Pac. 1109: 97 Pac. 555: 98 Pac. 509.)

23. It satisfactorily appears that plaintiff's counsel personally prepared the transcript on appeal, to which the clerk appended his certificate, and for which the sum of $1 was paid, and that no other liability was incurred on account thereof. It is only such legal charges as have been paid or promised to the clerk for the labor necessitated in preparing a transcript on appeal that may be recovered as a disbursement. No sum of money was paid to that officer except $1, and that item appears in the cost bill. If plaintiff's counsel undertook the work on his own account, all expenses thereby saved, in case he were defeated, inure to the benefit of the adverse party.

The items referred to were properly rejected, and the action of the clerk is approved.

Reversed : Motion to Retax Costs Denied.