Mitchell *vs.* Mitchell.

------

WILLIAM MITCHELL, plaintiff in error, *vs.* BENJAMIN F. MITCHELL, defendant in error.

1. This Court will not control the discretion of the Court below in re-fusing to grant a continuance of a motion to dissolve an injunction, on the ground that complainant is in bad health, and unable to get up affidavits to sustain it when the case has been twice continued for the same cause.

1. A copy of a verdict in an equity cause, unaccompanied by the bill, answer, and other parts of the record, is not evidence.

3. When the grantees are *volunteers*, the donor, who has conveyed a tract of land by deed to the donees, and files his bill to have the deed reform-ed, is entitled to relief if he can clearly show that he acted under a mistake as to the line of the lot, and that he did not believe that that which he conveyed included his dwelling-house and the cleared lands adjoining it, and did not intend to convey the dwelling-house and

cleared lands. But his own testimony as to his intention and mistake should not be held sufficient without corroborating circumstances. In such case relief will be granted when the evidence is satisfactory that the grantor acted under a mistake, though the grantee was not cognizant of the mistake at the time of the conveyance, and the injunction should have been enforced till the trial.

Continuance. Reformation of Deed. Mistake. Before Judge CLARK., Chambers. Worth county. July, 1869.

The bill of William Mitchell against Benjamin F. Mitchell and Benjamin Willis made the following case: William Mitchell owned a plantation in said county, composed of land lots Nos. 253 and 254, lying broadside to each other, and each containing four hundred and ninety acres. He supposed his residence and outhouses were on No. 254, and it contained one hundred and forty acres cleared, and was his farm. Being then eighty years old, and desiring to give some property to his children, in 1866 he conveyed No. 253 to his son, Benjamin F. Mitchell, for the use of himself and of his sisters, one of whom married Willis. The line between these lots was not distinctly marked, and when he made the deed he believed that the line of the lots run from eighty to one hundred yards north of his houses, and was marked by a fence dividing the cleared land on said lots, and when Benjamin F. Mitchell received the deed, he was of the same opinion with his father as to the dividing line. Willis acting in right of his wife, and as agent for Benjamin F. Mitchell, now claims that the dividing line so runs as to include the dwelling, most of the out-houses, and a large portion of the most valuable land of the plantation; and Willis has commenced moving the fencing, so as to expose William Mitchell's crops, and threatens, violently, to eject him from said house, and leave him homeless. He is old and poor, has a wife and three children dependent upon him; Willis is rich, and has much influence in the county.

He prayed a reformation of said deed, (if the line was not as he supposed,) so as to make it convey only that part of the plantation which he thought he was conveying when he made it, and that meanwhile Willis, and the others represented by

him, be enjoined from moving the fences, or otherwise inter-
fering with William Mitchell's possession, and use of that
part of the plantation claimed by him.   Discovery was
waived.   The bill was sanctioned, and injunction issued, as
prayed for.

Benj. F. Mitchell and Willis answered the bill.   Benj. F.
denied that at the date of the deed he understood the true
line between the lots to be as his father had charged, but
admitted that the line was not distinctly marked, and said
he did not know what his father then thought on that sub-
ject.  He said his father's object in making the deed was not
a wish to provide for his children, but to keep his creditors
from getting the land.   The other charges in the bill were
admitted, except the purpose of doing violence to the old
man, and making him homeless.   They answered that there
were on No. 254, houses and out-houses but little inferior to
those on No. 253.   Willis knew nothing of the delivery
of the deed except by hearsay.   They answered that they
had a right to No. 253 and its appurtenances, and had, by
kindness, permitted the old man to occupy said residence,
etc., since the date of his deed.   And lastly, they said this
whole matter was *res adjudicata,* by a decree in their favor
in a former bill filed by the old man against them.

These answers having been filed, said defendants moved
to dissolve the injunction, upon the ground that the equity
of the bill was sworn off.   Upon the day appointed for the
hearing, William Mitchell's counsel moved to postpone it
because his client was sick, and he had been unable to get
affidavits to contradict said answers.   The hearing was post-
poned till the 22d of June, 1868, and on that day, upon the
same showing, was further postponed till the 7th of July,
1868, the Judge giving notice that he would postpone no
more, without more definite evidence as to complainant's
sickness.   On that day his counsel again moved a postpone-
ment, and supported it by his affidavit that he had been
informed by the old man's children that he lived thirty miles
away, and was in very bad health, unable to come to consult
with his counsel, and that this ill health was caused by a

beating given him by said Willis, and that he believed these statements; and that could he consult with the old man he could procure affidavits to show that the answers as to the true line were false, that no one was present when the deed was made, but the old man and W. A. Harris, and that the true line does run as the old man supposed it did when he made the deed, *i. e.*, with said fence, north of his house. The Judge refused to postpone the hearing longer.

The bill and answers were read. Besides their answers the defendants relied upon a sworn plat of the premises, showing that the houses, etc., were on No. 253, and on the deed which conveyed the whole of No. 253, as aforesaid. They tendered in evidence a certified copy of a verdict in these words: "Worth Superior Court. October Adjourned Term, 1868. William Mitchell *vs.* Benjamin Mitchell. Bill for relief and injunction. We, the jury, find for the defendant, with costs of suit, this 13th December, 1868. T. W. Tison, foreman." It was objected to because it was unaccompanied by the record of the cause to which it applied. The objection was overruled. Counsel for William Mitchell produced his own affidavit, that he drew the bill to which said verdict applied, and stated its purpose, and that it had nothing to do with the matter now in controversy. He also read an affidavit of said Harris, who stated that he drew the deed, and that William Mitchell then understood that the line run north of his house as aforesaid.

After argument had, the Judge dissolved the injunction. William Mitchell's counsel say that the Judge erred in refusing said continuance, in admitting the copy verdict, and in dissolving the injunction.

D. H. POPE, VASON & DAVIS, for plaintiff in error.

STROZIER & SMITH, LOCHRANE & CLARK, for defendants.

Mitchell *vs.* Mitchell.

BROWN, C. J.

1. This Court will not control the discretion of the Court below in granting or refusing to grant a continuance, unless the Judge has abused the discretion which the law vests in him. In this case the Judge had allowed two continuances for the same cause, and had, on the second application, given notice that the complainant's counsel must be prepared with his affidavits by the time fixed upon for the hearing. Under these circumstances we are not prepared to say that the Court did wrong in overruling the motion.

2. The copy of the verdict was not accompanied by a copy of the bill, or answer, or other parts of the record, and should not have been received as evidence of a finding against the complainant in a former action.

3. But the more important question is, as to rights of the complainant under the bill filed for a reformation of the deed, and for an injunction. It is argued, with zeal and ability, that the complainant can not have the relief he seeks without proof of a *mutual* mistake on the part of donor and donee, and that the donee, who was not present when the deed was executed, swears off the equity of the bill when he denies all knowledge of the intention of the donor to retain his dwelling-house and the cleared lands adjoining it, when he made the deed, and of his mistake in believing that they were upon the lot adjoining the one conveyed.

Section 3061 of the Code provides that equity will not interfere to relieve against accidents, or mistakes of mere *volunteers*. And section 3069 of the Code, treating of mistakes of law, declares that the Court must be satisfied by the evidence that the mistake was mutual to authorize the reformation of a contract. The fair construction of this latter provision would seem to be, that as between purchasers for a valuable consideration and the grantor, the mistake must be mutual. But as the Court is not authorized in any case to relieve volunteers against mistakes by reforming the conveyance, it can hardly be a fair construction to say that the mistake must have been known to *them* at the time the deed was

Mitchell *vs.* Mitchell.

executed, before the grantor can be relieved by reforming a voluntary conveyance, executed by him, on account of mistake.

Volunteers in contracts, are defined to be " persons who *receive* a voluntary conveyance." 2 Bouvier's Law Dictionary, 636. It is very clear, therefore, that a Court of Equity would have no power under our Code to relieve the donees in this deed, who are volunteers, if they were applying for a reformation of the contract. But it does not follow that the grantor is not entitled to relief if a proper case is made by the bill; and the more especially is this true, as the mistake is one of *fact* and not of law. Section 3070 of the Code declares that, " In *all cases* of a mistake of a fact material to the contract, or other matter affected by it, if the party complaining applies within a reasonable time, equity will relieve."

Again, by section 3062 it is enacted that, "Mistake relievable in equity, is some unintentional act or omission, or *error*, arising from *ignorance*, surprise, imposition or misplaced confidence. This power is exercised with caution, and to justify it the evidence must be clear, unequivocal, and decisive as to the mistake."

We may remark here that the testimony of the grantor himself to the fact of his intention, and that he labored under a mistake when he made the deed, would not be sufficient, unless it is sustained by other testimony or by corroborating circumstances.

Apply the facts in this case to the rule laid down, and we think there is equity in this bill. The grantor was an old man, over eighty years of age. His object in making the conveyance was to provide in his lifetime for his children and grand-children. He owned too lots, side by side, each containing four hundred and ninety acres. The line between them was not distinctly marked. He acted under the belief that the line run some eighty to one hundred yards north of his dwelling-house, where a fence divides the cleared from the woodland. He has a family (probably a second wife,) with three small children. It turns out by the survey, made at the instance of the donees, since the controversy com-

Mitchell *vs.* Mitchell.

menced, that the line between the two lots, as originally surveyed, was not marked, that it runs between his dwelling-house, and smoke-house, and through his crib, leaving the dwelling-house, kitchen, and other out-houses on the lot conveyed, and only leaving his smoke-house, stables and half of his cribs on the lot retained by him.

Now if we take into consideration the object had in view by the donor and his own condition, it is not reasonable to conclude that he intended to convey his dwelling-house, and part of his out-houses, and the cleared land around them, which had been manured and was his best land for cultivation, to his first children, and at his advanced age to leave his dwelling with his little children and give it up to his older children, who were able to take care of themselves.

Mr. Harris, who drew the deed, swears that at the time it was drawn the understanding with the old man was, that the line run north of his dwelling-house, and that he was to remain in the dwelling-house during his life.

Upon the whole, we think the bill and affidavits make a strong case in favor of the complainant—sufficient to satisfy a reasonable mind, that he committed an "unintentional *error* arising from *ignorance*" of an important fact, in the true location of the line between the two lots, when he executed the deed; and we are satisfied the injunction should have been held up till the trial of the cause, and that the Judge erred in ordering that it be dissolved.

Let the judgment be reversed.