Argued February 15, reversed and remanded March 6, rehearing
denied April 3, 1917.

# BAGLEY *v.* BLOCH.

(163 Pac. 425.)

**Taxation—Part Payment—Validity of Delinquent Certificate.**

1. Where collector neglected to indorse on tax-roll the particular
part of land to which a part payment applied, his delinquency cer-
tificate, issued for a part only, was void, since no foundation existed
for recovery of remainder of the tax, except as against the entire
parcel.

**Taxation — Assessment Books — Description by Reference — "Public
Records."**

2. Section 3594, L. O. L., requiring taxed property to be described
by boundaries, or by reference to a description in a public record,
*held* satisfied by description by figures and abbreviations in "Index
to Taxpayers," "Division Book," and "Block Book," reference being
therein made to assessment-roll pages, and such books thereby became
"public records," in view of Section 3588, requiring plats to be made,
which are subject to public inspection, read in connection with Sec-
tions 3597, 3599, making descriptions by figures and abbreviations
sufficient.

**Deeds—Description by Reference.**

3. Where, in description contained in a deed, reference is made to
a public record, where adequate description may be found, resort may
be had thereto in order to identify premises.

[As to tax deeds as evidence, see notes in 17 Am. Dec. 505;
28 Am. St. Rep. 19.]

**Process—Substituted Service Statutes—Construction.**

4. Statutes providing for constructive service of process in secur-
ing jurisdiction of persons, being in derogation of common law, are to
be strictly construed.

**Taxation—Foreclosure Proceedings—Substituted Service.**

5. A stipulation, on which suit to quiet title was tried, assigning
no reason why process in tax foreclosure proceedings was served by
publication upon a resident of the state, did not uphold a decree sus-
taining the lien, in view of Section 3696, L. O. L., requiring sum-
mons to be served in like manner as in Circuit Court.

**Equity—Maxim.**

6. To entitle a party to equitable relief, he should be required to
do equity.

**Taxation—Quieting Title—Condition Precedent—Payment of Taxes.**

7. Since Laws of 1901, page 248, section 17, declares taxes a lien
on realty, it is immaterial that taxes were levied before present pur-
chaser owned lands, and in a suit to quiet title, based on invalidity

of a tax lien, it was incumbent upon plaintiff to tender delinquent taxes into court before issuance of decree, as required by Section 3725, L. O. L.

From Multnomah: GEORGE N. DAVIS, Judge.

In Banc.    Statement by MR. JUSTICE MOORE.

This is a suit by Geo. R. Bagley against Moses Bloch, Bertha Bloch, and Multnomah County, a *quasi*-municipal corporation, to quiet title to real property. The plaintiff for cause of suit alleges that he is the owner of 12.22 acres of land in Multnomah County, Oregon, particularly describing the premises; that each of the defendants claims to have some right, title or interest in and to such realty, but that the claim of each is void.

Multnomah County alone answering denied the material averments of the complaint, and for a further defense alleged, in effect, that on March 1, 1909, when the assessment for that year was required to be made as of that date, Melchior Kehrli was the owner of 4.12 acres of land in that county and Percy H. Blyth was also the owner therein of 33.88 acres, of which latter tract 8.2 acres and all of the former are included within the boundaries of the plaintiff's realty; that the assessor of Multnomah County duly assessed such lands for the year 1909 to the then owners; that based upon such valuation there was extended on the roll valid taxes which became liens on the premises; that these taxes were not paid and by reason thereof delinquency certificates were issued to the county, which corporation then became and now is the owner and holder thereof. It was further alleged that the suit should be abated for that the plaintiff had not deposited in court, upon filing his complaint, the amount of taxes properly chargeable to such real property.

The reply put in issue the allegations of new matter in the answer, and also averred that the attempted assessment of the land for the year 1909 was void because the description of the realty as noted on the rolls and in the delinquency certificates was insufficient, and in consequence thereof no lien was created upon the real property and no necessity existed for tendering any sum of money whatever as a condition precedent to the right to maintain this suit. The cause was tried upon an agreed statement of facts, which, omitting the signatures of counsel for the respective parties, reads:

"It is hereby stipulated and agreed by and between the plaintiff and the defendant, Multnomah County, that the following are the facts in this case, fully proven at the trial thereof:

"(1) That the defendant, Multnomah County, is a political subdivision of the State of Oregon.

"(2) That the plaintiff is the owner in fee simple and in the actual possession of the following described real estate, to-wit: That certain tract of land in Multnomah County, State of Oregon, bounded by a line run as follows: Beginning at a point on the half section line running easterly and westerly through section 31, township 1 N., R. 1 E., W. M., 24 chains west of the quarter section corner between sections 31 and 32 in said township and range; thence north 736.25 feet to a point; thence westerly and parallel to said half section line 911.3 feet to the Cornell Road; thence southeasterly along said road to a point which is 285 feet north of said half section line through section 31; thence easterly along the north line of a certain two-acre tract conveyed to Multnomah County by deed recorded in Book 158 of records of the said County, at page 453 thereof, 66.05 feet more or less to the northeast corner thereof; thence southerly along the east line of said two-acre tract, 285 feet to the southeast corner thereof, and thence easterly 629.4 feet more or less to the place of beginning.

83 Or.—39

"(3) That the defendant, Multnomah County, claims a lien against said land adverse to the title of the plaintiff by virtue of certain tax certificates of delinquency issued for unpaid taxes for the year 1909, described hereafter.

"(4) That on the 1st day of March, 1909, Percy H. Blyth was the record owner of that piece or parcel of land located in Multnomah County, Oregon, and more particularly described as follows, to wit: Beginning 24 chains west and 285 feet north of the quarter section corner in the east line of section 31, township 1 North, range 1 East, Willamette Meridian; thence west 935.1 feet; thence south 285 feet; thence west 1440.9 feet; thence north 11.11 chains; thence east 36 chains; thence south 448.26 feet to beginning. That on the 1st day of March, 1909, Melchior Kehrli was the record owner of that piece or parcel of land located in Multnomah County, Oregon, and more particularly described as follows, to-wit: Beginning 24 chains west of the quarter section corner between sections 31 and 32, township 1 north, range 1 east, Willamette Meridian; thence north 89 degrees 22 minutes west 629.4 feet; thence north 0 degrees 18 minutes west 285 feet; thence south 89 degrees 22 minutes east 630.85 feet; thence south 285 feet to the place of beginning.

"(5) That thereafter the said Percy H. Blyth conveyed the east 8.2 acres of the above described land so owned by him to one N. Q. Tanquery, and the plaintiff has by mesne conveyances become the owner in fee thereof; that said east 8.2 acres aforesaid and said property owned in 1909 by Melchior Kehrli, as aforesaid, comprises the land of the plaintiff described in paragraph 2 of this stipulation.

"(5½.) That there is on file in the office of the Tax Collector of Multnomah County, Oregon, a book entitled Index to Taxpayers for the year 1909, which book contains an alphabetical index of all taxpayers of the county and in which reference is made to the holdings of Percy H. Blyth and Melchior Kehrli as follows, to-wit: Name of taxpayer, Percy H. Blyth, Tax roll, page 5009, line 42, Block Book, page 5749. Name

of taxpayer, Melchior Kehrli, Tax roll, page 5009, line 43, Block Book, page 5749.

"(6) That the assessment tax roll for the year 1909, Multnomah County, Oregon, on file in the office of the tax collector of said county, contains the following entries with reference to the respective holdings of Percy H. Blyth and Melchior Kehrli, to-wit: At tax roll, page 5009, line 42: 'Tax lot No. 3; name of taxpayer, Percy H. Blyth; section 31, township 1 north, range 1 east; No. of acres of land, 33.88; valuation of land, $5,000, total tax, $45.50; No. of receipt, 31540; date of payment, 3/15/10, $34.07; delinquent $11.42; No. of certificate, 242.' (Heading, 'Description of land,' left blank.)  At tax roll, page 5009, line 43: 'Tax lot No. 4; name of taxpayer, Melchior Kehrli; section 31, township 1 north, range 1 east; No. of acres of land, 4.12; value of land, $600; total tax, $5.46; delinquent $5.46; No. of certificate, 243.' (Heading, 'Description of land,' left blank.)

"(7) That there is a book known as the 'Division Book' on file in the office of said Tax Collector, in which appears an entry as follows, to-wit: 'Tax roll, page 5009, line 42, Percy H. Blyth, 25.18 acres; N. Q. Tanquery, 8.2 acres.'  That the land of the plaintiff is not otherwise attempted to be assessed for said year.

"(8) That there is on file in the office of the County Assessor of Multnomah County, Oregon, a book entitled as follows: '1908–1911. Block Book Acreage North.'  That contained in said book are the following entries for the year 1909, to-wit: 'Section 31, township 1 N., Range 1 E.; Tax List No. 3; Beg. 24 chs. W. and 285 minutes N. of ¼ Sec. Cor. in E. line of Sec. 31, thence W. 935.1 minutes, thence S. 285 minutes, thence W. 1440.9 minutes; thence N. 11.11 chs., thence E. 36 chs., thence S. 448.26 minutes to beg.; page 5749; No. acres, 33.88; value of land, $5,000; value of improvements ——.  Section 31, Township 1 N. Range 1 E. Tax List No. 4; Beg. 24 chs. W. of ¼ Sec. Cor. between Sect. 31 and 32, thence N. 89 degrees 22 minutes W. 629.4 minutes; thence N. 0 degrees 18 minutes W. 285 minutes; thence S. 69 degrees 22 minutes E. 630.85

minutes; thence S. 285 minutes to beg.; page 5749; No. acres, 4.12; value of land, $600; value of improvements, $——.' That this so-called Block Book is one of the series of similar books on file in the office of the County Assessor of Multnomah County, containing in detail a description of all of the taxable real estate within the county for the years 1908 to 1911.

"(9) That delinquent certificate No. 242 gives the name of the taxpayer as Percy H. Blyth, description of property assessed as 'Tax Lot No. 3, section 31, township 1 N. R. 1 E., 8.2 acres, valuation $1,255, tax $11.43, total $18.10,' and no other or further description of land is given in said certificate.

"(10) That delinquent certificate No. 243 gives the name of the taxpayer as Melchior Kehrli, designation of property assessed as 'Tax lot No. 4, section 31, township 1 N. R. 1 E., 4.12 acres, valuation $600, tax $5.46, total tax $8.90,' and no other or further description of said land is given.

"(11) That the county has begun suit for the foreclosure of said certificates Nos. 242 and 243 and has secured a decree accordingly; that said certificates are described in said suit to refer to the following lands, viz.: No. 242, Frac. lot 3, sec. 31, T. 1 N. R. 1 E. 8.2 acres. No. 243, lot 4, sec. 31, T. 1 N. R. 1 E. 4.12 acres. That the decree in said foreclosure suit describes the said property in the same manner and decrees the foreclosure of said certificates on the land by the same description.

"(12) That the plaintiff at the time of the commencement of this suit was, and ever since has been, and now is a resident of Hillsboro, Washington County, Oregon, and was actually in said state; that no summons or other process in said cause was served upon him personally, but subsequent to the filing of said suit a summons was published by order of the court for six consecutive weeks (seven insertions) in the Sunday Welcome, a newspaper of general circulation published in this county and state.

"(13) That the same form of assessment and the same description as in paragraphs 6 and 8 is contained in the assessment-roll of Multnomah County, Oregon,

for the year 1908, and the tax against the property of said description of $23.73 against property described as lot 3 of said section 31, was by the tax collector applied on delinquent certificate No. 242.

"(14) That the land of the plaintiff described in paragraph 2 is a part of the northeast quarter of said section 31 and is not and never was platted or designated as lots 3 and 4, or any lot or lots whatever, by the government or the owner (and was not known by such numbered lots, or otherwise or at all, except as described in this stipulation, in the so-called Block Book of 1909); that the remainder of said quarter section of land is owned in several separate tracts and by divers and sundry persons not parties to this suit.

"(15) That neither prior to the commencement of this suit nor at any other time, nor at all, has the plaintiff herein, nor his predecessors in interest, nor any person, nor at all, tendered or offered to pay the said alleged taxes levied upon said property for the year 1909, mentioned in paragraph 6 of this stipulation."

Founded upon such stipulation, conclusions of law were deduced as follows:

"That the assessment made and entered against the property of the plaintiff as set out in his complaint by the assessor of Multnomah County for the year 1909 was lawful, valid, and regular, and the taxes extended thereon became a lien against the property until paid; that the county of Multnomah as owner and holder of the certificate of delinquency issued against said property is entitled to a lien against said property for the amount of the taxes and accrued interest, penalties, and costs; that the defendant, Multnomah County, is entitled to a decree of this court dismissing the suit of the plaintiff so far as it pertains to the said county of Multnomah."

A decree having been entered in accordance therewith the plaintiff appeals.

REVERSED AND REMANDED.

For appellant there was a brief over the names of *Mr. Newton McCoy* and *Mr. Horace B. Nicholas,* with an oral argument by *Mr. McCoy.*

For respondent there was a brief over the names of *Mr. Walter H. Evans,* District Attorney, and *Mr. Samuel H. Pierce,* Deputy District Attorney, with an oral argument by *Mr. Pierce.*

MR. JUSTICE MOORE delivered the opinion of the court.

In adverting to the stipulation in this opinion reference will generally be made to the paragraphs thereof only. An examination of that part of paragraph 6 relating to the land of Percy H. Blyth will show that the annual burden undertaken to be imposed in the year 1909 upon "Tax lot No. 3" was $45.50, on account of which only $34.07 was paid, thereby leaving due $11.42, to evidence which delinquent certificate No. 242 was issued. So far as can be determined from an inspection of this entry on the tax-roll the delinquency there noted related to and remained a charge upon the entire 33.88 acres of land. The description of a part of the plaintiff's premises, as given in the certificate mentioned, is set forth in paragraph 9, where it will be observed the delinquency applies to 8.2 acres in "Tax lot No. 3," the property of Percy H. Blyth in the section, township, and range hereinbefore specified; but in what part of that lot the particular area last mentioned is situated and upon which the tax was not paid, it is impossible to determine. In the suit to foreclose the alleged lien and in the decree rendered therein it will be remembered that the description of the premises, as set forth in paragraph 11, reads: "No. 242. Frac. lot 3, sec. 31, T. 1 N., R. 1 E., 8.2 acres."

Paragraph 5 recites that Percy H. Blyth conveyed the east 8.2 acres of his realty to N. Q. Tanquery, from whom the plaintiff, by mesne conveyances, derived title to a part of his land, the metes and bounds of which are set forth in paragraph 2. An examination of the latter paragraph will show that from the northeast corner of the original Blyth tract the plaintiff's line ran, "thence westerly and parallel to said half section line 911.3 feet to the Cornell Road." By platting the land from the boundary thus given and measuring the angle with a protractor it will be seen that the highway referred to runs from the northwest corner of the plaintiff's premises south about 25 degrees 45 minutes east. Though the area of land conveyed by Blyth is correctly stated in paragraph 5, the tract there referred to is not "the east 8.2 acres," for such division of his land would mean the western boundary of the plaintiff's premises was indicated by a line running north and south, when, in fact, it is northwest and southeast.

1. The officer receiving the partial payment of the annual tax undertaken to be imposed upon Blyth's entire real property neglected to note on the margin of the tax-roll the particular part of the land as to which the tax was paid, such as, "All part thereof situate west of the Cornell Road," or other equivalent language; and by reason of such failure no foundation existed for the recovery of the remainder of the tax except as against Blyth's originally described realty, and the delinquency certificate issued for only a part thereof is void. This conclusion, however, does not invalidate the remainder of the tax if it ever was a lien upon Blyth's realty.

2. That part of plaintiff's land, formerly owned by Melchior Kehrli and indicated in paragraph 6 as "Tax lot No. 4," on which the taxes for the year 1909,

amounting to $5.46, were not paid and by reason thereof delinquent certificate No. 243 was issued, stands on a different footing. In order properly to understand the assessment attempted to be made of that tract it becomes necessary to refer to clauses of the statute in force in the year 1909 regulating such matters: All property must be assessed for state and county purposes to the person who owned it at 1 o'clock A. M. on the 1st day of March for the taxes of the preceding year: Section 3586, L. O. L. The county assessor is required to return to the county clerk on or before the first Monday in October the assessment-roll containing a complete assessment of all taxable property entered therein,

"including a full and precise description of the lands and lots owned by each person therein named * * which description shall correspond with the plan or plat of any town laid out or recorded, * * but no assessment shall be invalidated by a mistake in the name of the owner of the real property assessed * * if the property be correctly described; *and provided further,* that where the name of the true owner, or the owner of record, of any parcel of real property shall be given, such assessment shall not be held invalid on account of any irregularity in the description; *provided,* such description would be sufficient in a deed of conveyance from the owner; or on account of any description upon which, in a contract to convey, a court of equity would decree a conveyance to be made": Section 3586, L. O. L.

"The assessor of each county shall make a plat of the government surveys, and of all town plats within his county, and shall note therein, or in a present ownership book or list, the owner of each tract of land, and of each town lot; and in counties where the assessor shall describe the land in the roll in the order of its location upon the grounds he shall keep a taxpayers' index for each year, which shall be a public record subject to general inspection; and in such index

shall be entered the name of every taxpayer against whom any tax shall be charged in the county, in alphabetical order, * * and shall refer to the pages and lines of the roll where the assessment of such taxpayer may be found'': Section 3588, L. O. L.

''The assessor shall set down in the assessment-roll, in separate columns, and according to the best information he can obtain:

''1. The names of all taxable persons in his county assessable by him.

''2. A description of each tract or parcel of land to be taxed, specifying under separate heads the township, range, and section in which the land lies, in tracts not exceeding a quarter section according to the government survey, except where the same are described by metes and bounds; or, if divided into lots and blocks, then the number of the lot and block'': Section 3593, L. O. L.

''When lots are situated in any city, village, or town a plat of which shall have been recorded, the city, village, or town in which the same are situated shall be specified in the assessment roll'': Section 3594, L. O. L.

''If the land assessed be less or other than a subdivision according to the United States survey, unless the same be divided into lots and blocks so that it can be definitely described, it shall be described by giving the boundaries thereof, or by reference to a description thereof by book and page of any public record of the county where the same may be found, or in such other manner as to make the description certain'': Section 3597, L. O. L.

''It shall be sufficient to describe lands in all proceedings relative to the assessing, * * or selling the same for taxes, by initial letters, abbreviations, figures, fractions, and exponents to designate the township, range, section, part of section, distance, course, bearing, and direction, and also the number of lots and blocks or part thereof'': Section 3598, L. O. L.

''In all proceedings for the assessment, levy, or collection of taxes, or sale of property, or other proceedings for collection of delinquent taxes, said designa-

tion as provided in Sections 3597 and 3598 hereof shall be a sufficient description, and it shall not be necessary to enter in such proceedings a description of such tract by metes and bounds'': Section 3599, L. O. L.

In *West Portland Park* v. *Kelly,* 29 Or. 412 (45 Pac. 901), it was held that ''block books,'' containing descriptions of land and kept by the county assessor for convenience in performing his official duties, were not public records, and entries so made therein were only private memoranda. At page 419 of the opinion in that case it is said:

''Had the block books or other documents kept by the assessor been public records, so that the entries made therein would have constituted notice to all persons whose property might be affected thereby, the plaintiff could have relied upon his inspection of them; but such books and documents, though convenient for and valuable aids to the officer, are no part of the assessment roll, and convey no notice to the taxpayer of their contents.''

In order to correct the defect thus adverted to Section 3588, L. O. L., was enacted, which required the assessor of each county to make a plat of the government surveys and of town plats within his county and to note therein, or in a present ownership book or list, the owner of each tract of land and of each town lot; and made such plats public records subject to general inspection. A casual perusal of that section of the code would seem to limit the entries which might legally be made in the public records specified to lands indicated by plats of the government surveys and to lots and blocks designated on recorded city, village, and town plats. When, however, that part of the statute is read in connection with Sections 3597 and 3599, L. O. L., which should be done in order to ascertain and determine the entire scope and effect of the law gov-

erning assessment for taxation, it is believed the description of the plaintiff's real property as given in the books entitled, "Index to Taxpayers for the Year 1909," "Division Book," "1908–1911 Block Book Acreage North," in which volumes reference is made to the pages of the roll where the assessment of the taxpayer may be found, makes such books public records within the meaning of the statute, thereby rendering the description sufficiently certain for a deed of conveyance of land, or to authorize a court of equity to decree a specific performance of a contract to convey real property in a suit instituted for that purpose, as indicated in Section 3586 of the code.

3. This deduction is reached by invoking the maxim, *Id certum est quod certum reddi potest;* and when in the description of land contained in a deed reference is made to a public record where an adequate delineation of the realty may be found, resort may be had thereto in order to identify the premises: *House* v. *Jackson,* 24 Or. 89 (32 Pac. 1027); *Lewis* v. *Beeman,* 46 Or. 311 (80 Pac. 417); *St. Dennis* v. *Harras,* 55 Or. 379 (105 Pac. 246, 106 Pac. 789).

4, 5. It will be remembered that no summons or other process was personally served upon the plaintiff in the suit to foreclose the delinquency certificates, though he then resided and now lives at Hillsboro, Oregon. Notice of such proceedings, however, was published by order of the court for seven consecutive insertions in a newspaper of general circulation printed in Multnomah County, Oregon. The statute declares that all taxes lawfully imposed upon real property shall be a lien thereon from the day on which the warrant is issued commanding the collection of such burden: Section 3684, L. O. L. At any time after the expiration of six

months from the failure of an owner of real property
to pay the taxes thereon as they mature, it is incumbent
upon the tax collector, when so demanded by any per-
son who offers to pay such taxes, penalty, and interest,
to issue to him a delinquency certificate against the
land described therein: Section 3693, L. O. L. Such
written evidence has the force and effect of a judgment
against the premises and an execution and sale
thereof: Section 3694, subd. 4, L. O. L. At any time
after three years and prior to the expiration of six
years from the delinquency the holder of the certificate
thereof may cause a summons to be served upon the
owner of the real property, notifying him that applica-
tion will be made to the Circuit Court of the county in
which the land is situated to foreclose the tax lien
thereon: Section 3695, L. O. L.

"Summons shall be served and returned in the same
manner as summons in a civil action is served in the
Circuit Court": Section 3696, L. O. L.

It will be kept in mind that paragraph 12 shows the
plaintiff was and is a resident of Hillsboro, Oregon,
but that in the suit to foreclose the tax liens evidenced
by the delinquent certificates the summons was at-
tempted to be served upon him only by publication.
The stipulations fail to disclose why such constructive
service of process was resorted to, or to show what ef-
fort, if any, was made to ascertain the residence of the
plaintiff. The method of securing jurisdiction of the
person by a constructive service of process is not in
conformity with the principles of the common law, but
is given by statute, which enactment being in deroga-
tion of the ancient rule is to be construed strictly:
*Heatherly* v. *Hadley,* 4 Or. 1; *Odell* v. *Campbell,* 9 Or.

298; *Willamette Real Estate Co.* v. *Hendrix,* 28 Or. 485
(42 Pac. 514, 52 Am. St. Rep. 800) ; *Mertens* v. *North-
ern State Bank,* 68 Or. 273 (135 Pac. 885).    In *North-
cut* v. *Lemery,* 8 Or. 316, 322, Mr. Chief Justice KELLY,
in referring to a decree given by a tribunal of superior
power to hear and determine causes of the class and
kind there involved, remarks :

"The court which rendered it, although one of gen-
eral jurisdiction, was then exercising a special power
conferred upon it by statute, and not according to the
course of the common law.    And in such cases, even a
court of general jurisdiction must strictly comply with
the requirements of the statute in its proceedings, and
this compliance must affirmatively appear from the rec-
ord itself ; and unless it does so appear, no presumption
will be indulged to sustain the validity of its judgments
or decrees."

To the same effect see *Odell* v. *Campbell,* 9 Or. 298;
*Furgeson* v. *Jones,* 17 Or. 204 (20 Pac. 842, 11 Am. St.
Rep. 808, 3 L. R. A. 620) ; *Willamette Real Estate Co.*
v. *Hendrix,* 28 Or. 485 (42 Pac. 514, 52 Am. St. Rep.
800) ; *Knapp* v. *Wallace,* 50 Or. 348 (92 Pac. 1054, 126
Am. St. Rep. 742) ; *Fishburn* v. *Londershausen,* 50 Or.
363 (92 Pac. 1060, 15 Ann. Cas. 975, 14 L. R. A. (N. S.)
1234) ; *Smith* v. *Whiting,* 55 Or. 393 (106 Pac. 791) ; *De
Vall* v. *De Vall,* 57 Or. 128 (109 Pac. 755, 110 Pac. 705).

The stipulation not having assigned any reason why
the summons was attempted to be served by publica-
tion did not state facts sufficient to uphold the decree
rendered.

6, 7. This suit is tantamount to a bill to redeem, in
order to obtain which relief under the statute now in
force, the tax, interest, penalty, etc., should have been
tendered as a condition precedent to granting such re-
dress: Section 3725, L. O. L.    To entitle a party to

equitable relief he should be required to do equity. Every owner of land owes a common legal duty to the public to pay the taxes annually levied upon his realty in order to maintain the state government, to uphold the county administration, and to support the general schools; and such obligation requires him to pay, at least, such part of those burdens as should have been equally and ratably imposed upon his realty. The plaintiff's counsel, however, invoking the rule adopted in *Hughes* v. *Linn County,* 37 Or. 111 (60 Pac. 843), maintain that it was unnecessary for their client, as the present owner of the land, to comply with the requirements of the section of the statute last referred to by tendering with his complaint any part of the taxes that were levied against the premises of his predecessors in interest as a condition precedent to the right to maintain this suit. That decision was rendered April 16, 1900, and prior to the enactment of the statute declaring taxes to be a lien upon real property against which they were levied: Gen. Laws Or. 1901, p. 248, § 17. It was thereafter held in *Title Trust Co.* v. *Aylsworth,* 40 Or. 20 (66 Pac. 276), that where an assessment of lands sold for taxes was void, the owner of the realty was under no obligation to tender, as required by law, any sum for the benefit of the holder of the tax title based on such assessment before being heard to contest such title. The same conclusion was reached in *Moores* v. *Clackamas County,* 40 Or. 536 (67 Pac. 662). These cases proceed upon the theory that if the attempt to levy a tax upon a particular piece of real property is ineffectual for that purpose, the burden thus undertaken to be imposed is void; and that in a suit to remove the cloud so cast upon the title to the land it is unnecessary to comply with the requirements

of the statute by tendering any part of the tax. This course of procedure permits counsel for the plaintiff to place his own construction in advance of the trial upon the alleged invalidity of the tax, and, in effect, amounts to a practical repeal of the section of the statute referred to, for if the rule is to obtain a suit in the nature of a bill to remove a cloud from the title to realty will invariably be resorted to instead of a suit to enjoin the collection of a tax. In *Welch* v. *Clatsop County,* 24 Or. 452 (33 Pac. 934), which case was decided before taxes were declared to be a lien upon realty (Gen. Laws Or. 1901, p. 248, § 17), it was ruled that in a suit to enjoin the collection of taxes, a court of equity would not interfere in the absence of a tender by the plaintiff of the amount of the burden, unless the tax was undertaken to be assessed against property that was exempt therefrom, or that the burden was imposed by persons without authority, or that they had proceeded fraudulently. To the same effect see: *Alliance Trust Co.* v. *Multnomah County,* 38 Or. 433 (63 Pac. 498); *Lapp* v. *Marshfield,* 72 Or. 573 (144 Pac. 83). At page 578 of the opinion in the latter case Mr. Chief Justice McBRIDE announces the correct legal principle when he says:

"The case of *Welch* v. *Clatsop County,* 24 Or. 452 (33 Pac. 934), lays down a salutary rule to be applied to cases of this kind by requiring the party claiming relief against an illegal or irregular tax to tender what is fairly and equitably due before equity will relieve him."

In all suits hereafter instituted for equitable relief from the imposition of a general tax upon specific real property the rule last referred to will be applied, and if it be finally determined that any part of the money

so tendered should be returned to the plaintiff, a decree to that effect can be made. By reason of the failure personally to serve the summons upon the plaintiff or to set forth the reason for not having done so in the suit to foreclose the delinquency certificate as to tax lot No. 4, and in consequence of issuing a deficiency certificate for only a part of tax lot No. 3 when the delinquency related to the whole thereof, the decree of foreclosure rendered in that suit is set aside, the decree given therein is reversed, and the cause is remanded with direction to the trial court that if within 60 days from the entry therein of our mandate the plaintiff deposit in the lower court the entire taxes now asserted against his land, the penalties resulting from the failure to pay such legal obligations, and the interest on such taxes, the relief prayed for in the suit will be granted; otherwise such burdens will remain liens upon the premises, and this suit will be dismissed.

REVERSED AND REMANDED.