Argued January 21, affirmed March 4, 1953

In the Matter of the Estate
of Clarence Nelson Myers, Deceased
DAMSKOV *v.* MYERS et al.

254 P. 2d 227

*Gordon A. Ramstead,* of Eugene, and *Howard Kaffun,* of Salem, argued the cause and filed briefs for appellants.

*William R. Thomas* argued the cause for respondent. On the brief were Morley & Thomas, of Lebanon, and Harrison M. Weatherford and Weatherford & Thompson, of Albany.

Before WARNER, Acting Chief Justice, and ROSSMAN, BRAND, TOOZE and PERRY, Justices.

WARNER, A. C. J.

This is an appeal from a proceeding for a determination of heirship wherein plaintiff claims to be the sole heir at law of Clarence Nelson Meyers (also known as Clarence Meyer), who died intestate in Linn county, Oregon, on the 13th day of August, 1950. It is brought here by the disappointed defendants who claim his estate as nearest of kin.

The defendants constitute one brother, five sisters and two nephews of the late Mr. Meyers who allege they are decedent's sole heirs at law.

The probate of Mr. Meyers' estate was instituted in the county court of Linn county. The plaintiff filed her petition in the proceeding praying that she be

adjudged the decedent's daughter and sole heir. After issue was joined by the defendants, the contest was thereupon transferred to the circuit court of Linn county for hearing and determination. The resultant judgment favorable to plaintiff is the basis for the appeal.

Only one question is presented for our consideration: Was Iris Irene Damskov the sole heir of Clarence Nelson Meyers at the time of his death? The parties are agreed that he left no wife or other children surviving him, nor do they challenge the validity of the adoption proceeding had in 1919.

Plaintiff represents that she was born Iris Irene Parks, the daughter of Ira C. Parks and Flossie C. Parks, his wife who died soon after the birth of plaintiff; that in August, 1919, pursuant to adoption proceedings regularly had in the county court for Lane county, Oregon, the plaintiff was decreed to be the daughter of the decedent Clarence Meyers and his wife Iva; and that subsequently the Meyerses were divorced and decedent never remarried.

The material allegations of the plaintiff's petition are admitted by the defendants, except that they deny that plaintiff was the adopted daughter of the decedent at the time of his death. Concerning plaintiff's status as of that time, they allege that some time in June, 1931, a second adoption proceeding was had in the county court for Lane county wherein Ira Parks, plaintiff's natural father, and Della I. Parks, his second wife, became the adoptive parents of plaintiff and have been ever since July 31, 1931. In the 1931 proceeding, Iris Meyers, the former wife of the decedent and adoptive mother of plaintiff, gave her written consent to the second alleged adoption; and because

of a failure to obtain a formal consent from the decedent, defendants claim that the desired result and regularity were accomplished by serving him by a published citation.

It is the contention of defendants that the second adoption proceeding revoked and destroyed plaintiff's status as a daughter and heir of Clarence Meyers. The regularity of the second adoption is challenged by plaintiff's reply. She also argues that if her adoption by the Parkses is regular, it, nevertheless, does not, as a matter of law, work a termination of her status as decedent's sole heir.

■ The gulf which separates defendants' high hopes from achievement can only be bridged by the employment of a judicial record that will withstand the test of legal principles long established in this state and ofttimes applied with approval. Defendants, to prevail in this matter, must first demonstrate beyond cavil that the plaintiff was legally adopted in 1931. If they fail in that cardinal accomplishment, then the chasm which separates their asserted right from realization continues as deep, dark and real as it was before they challenged the claim of plaintiff as the sole heir of Mr. Meyers.

At the very threshold of their legal presentation, they are met with the controlling case of *Furgeson v. Jones,* 17 Or 204, 20 P 842, 11 Am St Rep 808, 3 LRA 620. In that case this court, in 1888, laid down certain basic doctrines pertaining to adoption procedures which have ever since been consistently followed with respect and fidelity. See *Volz et ux. v. Abelsen,* 190 Or 319, 324, 224 P2d 213, 225 P2d 768; *In re Frazier's Estate,* 180 Or 232, 238, 177 P2d 254, 170 ALR 729; *Williams et ux. v. Capparelli,* 180 Or 41, 44, 175 P2d

153; *In re Flora's Adoption,* 152 Or 155, 159, 52 P2d 178; *Bagley v. Bloch,* 83 Or 607, 163 P 425; *DeVall v. DeVall,* 57 Or 128, 137, 109 P 755, 110 P 705; *Non-She-Po v. Wa-Win-Ta,* 37 Or 213, 216, 62 P 15, 82 Am St Rep 749.

■ The reasons for the strict rules laid down in *Furgeson v. Jones,* supra, are supplied by Mr. Justice LORD in the following words, at pages 217 et seq.:

"The permanent transfer of the natural rights of a parent was against the policy of the common law. The right of adoption, as conferred by this statute, was unknown to it, and repugnant to its principles. Such right was of civil-law origin, and derived its sanction from its code. The right of adoption, then, being in derogation of common law, is a special power conferred by statute, and the rule is, that such statutes must be strictly construed. (Brown v. Basey, 3 Dall. 365; Dwarris on Statutes, 257). This being so, the statute must receive a strict interpretation, and every requirement essential to authorize the court to exercise the special power conferred must be strictly complied with.

"* * * * * *

"* * * The reason is, that consent lies at the foundation of statutes of adoption, and when it is required to be given and submitted to the court, the court cannot take jurisdiction of the subject-matter without it."

What was said in the recent case of *Quinn v. Hanks,* 192 Or 254, 233 P2d 767, concerning the jurisdiction of circuit courts in the exercise of specially conferred statutory powers, applies with equal force to county courts exercising powers of the same character. We there expressed ourselves, at page 265, in the following language:

"The court which rendered this decree, although one of general jurisdiction, was then exer-

cising a special power conferred upon it by statute, and not according to the course of the common law. It is well established in this state that a circuit court, when exercising a special power conferred upon it by statute, and not according to the course of the common law, is a court of special and inferior jurisdiction, and its proceedings in such cases are subject to all the incidents applicable to a court of that kind. Therefore, in order that its adjudications may be invulnerable to attack, its record must affirmatively show that jurisdiction existed. A decree of such a court is subject to collateral attack. * * * [Citing cases.]''

Also see *Zipper v. Zipper,* 192 Or 568, 574, 235 P2d 866.

In attempted contradiction of the foregoing doctrine, the appellants bring to our attention *Wilson v. Hendricks,* 164 Or 486, 102 P2d 714, where it is said, at page 489:

"It is settled that the county courts of this state, when acting in probate matters, are courts of general jurisdiction, and, whenever their proceedings are called in question collaterally, they are entitled to all the legal presumptions pertaining to the records of courts of superior jurisdiction. * * *''

■ The principle there announced, and also in *Woodburn Lodge v. Wilson,* 148 Or 150, 159, 34 P2d 611, cited in *Wilson v. Hendricks,* supra, is correct but readily distinguishable from the instant matter. Those cases relate to county courts in the exercise of their probate functions. Adoption is not a matter of probate. The court's powers with reference to it are conferred by a special statute. Moreover, even in probate when constructive notice is given to or constructive service obtained upon a nonresident, the rules announced in *Furgeson v. Jones,* supra, *Laughlin v. Hughes et al.,*

161 Or 295, 306, 89 P2d 568, and the more recent cases above cited, obtain and are applicable.

■ The proof of the second adoption depends upon the validity of the decree. The validity of the decree, in turn, depends upon a strict compliance with every statutory step required as a condition precedent to the granting of the decree. Those who rely upon such a decree as material to the success of their cause must bring to the forum where adoption is in issue not the decree alone but a record which proclaims statutory compliance by a complete demonstration of a meticulous fulfillment of each detail required by the law to give jurisdictional vitality to the adoption. *Laughlin v. Hughes et al.*, supra.

■ It is elementary that to support a judgment or decree there must not only be appropriate allegations in the pleadings but, when issue is joined, there must be adequate proof to support such allegations.

In the instant matter the defendants rely solely upon a selected part of the record of the second adoption. They have tendered as one exhibit the following documents from that record, and no more: the petition, the consent of the child's mother by the first adoption, the report of the state welfare commission, an affidavit of publication of citation, a citation with the sheriff's return of no service and the decree of adoption. The order directing service by publication, if one was made, is not a part of the record here.

■■ Although the transcript of testimony strongly supports the conclusion that counsel for defendants in the trial labored under the mistaken notion that they were offering a certification of a complete adoption record, they here admit the incompleteness of the record in the adoption proceedings of 1931 and rely

solely upon the efficacy and conclusiveness of the decree to prove the second adoption of plaintiff. Although they do not expressly point to it, we think it is in order to note that the decree, unlike that in the Furgeson case, does carry a recital in words as follows: "* * * and a citation having issued herein for service upon the aforesaid Clarence Meyer and said citation having been duly served upon the said Clarence Meyer in the manner required by law * * *." However, such a recital, no matter how potent in proceedings of a different character, affords no help here. In Oregon where statutes relating to constructive service are strictly construed, in order to sustain the jurisdiction of a court based on such service, the record must affirmatively show that the statute has beeen complied with, and a formal recital that service has been had does not change that principle. *Laughlin v. Hughes et al.*, supra; *Re Estate of Stewart,* 110 Or 408, 412, 223 P 727; 49 CJS, Judgments, 846, § 426.

In *Laughlin v. Hughes et al.*, supra, we said, at pages 306 et seq.:

"This court has held that the presumptions of regularity applicable to judgment in courts of general jurisdiction are applicable only where the court is proceeding according to the course of the common law and not *where the jurisdiction has been acquired in some special manner prescribed by the statute.* We quote from one of the opinions wherein it is so held:

" 'True, in the absence of anything in the record to the contrary, it will be presumed that service was properly had, and that the defendant appeared in person, if necessary; but when it is made to appear that the judgment was had upon a substituted service, and not upon proceedings according to the course of the common law, nothing will be

presumed, but every fact necessary to give jurisdiction must affirmatively appear.' Fishburn v. Londershausen, 50 Or. 363, 92 P. 1060, 14 L.R.A. (N.S.) 1234, 15 Ann. Cas. 975.

"We are not unmindful that many grounds of impeachment may be urged against a judgment upon direct attack which are not available upon collateral attack; but the principle is well settled that where a judgment is relied on as an adjudication of the subject matter or as establishing any particular state of fact of which it is the judicial result, *it can be proved only by offering in evidence a complete record or a duly authenticated copy of the entire proceeding in which the judgment was rendered:* McLaughlin v. Reichenbach, 52 Colo. 437, 122 P. 47, citing Jansen v. Hyde, 8 Colo. App. 38, 44 P. 760; 1 Wharton, Law of Evidence (3d Ed.) § 824; 2 Freeman on Judgments (4th Ed.) § 407; Harper v. Rowe, 53 Cal. 233; Mason v. Wolff, 40 Cal. 246; Mitchell v. Mitchell, 40 Ga. 11; Thomas v. Stewart, 92 Ind. 246; Vail v. Iglehart, 69 Ill. 332; Kenyon v. Baker, 16 Mich. 373, 97 Am. Dec. 158; Hampton v. Speckenagle, 9 Serg. & R. (Pa.) 212, 11 Am. Dec. 704; Walls v. Endel et al., 20 Fla. 86; State ex rel Nave v. Hawkins et al., 81 Ind. 486; Davidson v. Murphy, 13 Conn. 213; Smith et al. v. Smith et al., 22 Iowa 516; Donald et al. v. McKinnon, 17 Fla. 746.

"It is therefore from the entire record that it is to be determined whether the court entering the judgment had jurisdiction to do so." (Italics ours.)

At the time of the institution of the second adoption proceeding in 1931, the following § 33-404, Oregon Code 1930, was a part of the adoption code, the pertinent part reading:

"If a parent does not consent to the adoption of his child, the court shall order a copy of the petition and citation thereon to be served on him personally, if found in the state, and if not found

in the state then a copy of the citation shall be published or served in the manner as provided by section 11-608, Oregon Code, and acts amendatory thereof, for the service of citation by publication or for personal service outside of the state. * * *.''

Section 11-608, Oregon Code 1930, provided for service of citation upon nonresident parties by publication ''in a newspaper published in the county * * * not less than four weeks, *or for such further time as the court or judge may prescribe.*'' (Italics ours.)

■ It is therefore evident that when a parent does not consent to an adoption and cannot be found in the state, the court must order publication of the citation and this order must necessarily (1) reveal that such parent is not a resident of the state and (2) prescribe the number of times for publication, but not fewer than four weeks.

■ When a summons or citation is made pursuant to a statutorily-required order, its validity and force as constructive notice to the parties thereby served are not only dependent upon such an order as conditions precedent but the order itself must strictly comply with statutory requirements. 72 CJS, Process, 1069, 1095, §§ 55, 65. A citation which depends upon a statutory order for its issuance, service or publication is a nullity in the absence of such order.

■ The right to publish citations or summonses being statutory and not in accord with the common law, the publication thereof and all steps necessary to its implementation must strictly follow the statute and affirmatively appear from the record itself. No presumptions will be indulged in to help it. *Dixie Meadows Co. v. Kight,* 150 Or 395, 45 P2d 909; *Bagley v. Bloch,* supra, 83 Or 607; *Northcut v. Lemery,* 8 Or 316.

That a publication of a citation was made in the adoption proceedings of 1931 is evident from the affidavit of the printer, but we have no record that shows an order authorizing it or, if made, the prescribed time for the citation publication. We know from the sheriff's return that that officer was unable to find the nonconsenting parent for the purpose of personal service. We learn, too, from the petition for adoption that Clarence Meyers "is a non-resident of and has left the State of Oregon" and petitioners had no knowledge of his actual residence. Referring to a substantially similar allegation found in the petition in *Furgeson v. Jones,* supra, the court observed, at page 211: "* * * In such case, and the record is silent, there can be no presumption that jurisdiction over his person was acquired."

In the state of the adoption record before us, we find ourselves in the identical factual situation which confronted the court in the Furgeson case, i.e., no consent, no service and no appearance upon the part of the nonconsenting parent. We cannot supply the missing record by speculation. Even if we were at liberty to assume, from the language of the citation appended to the affidavit of the printer, that an order of publication had been made, we still could not test the sufficiency of the publication without examination of the order itself, if made, to learn what length of time had been prescribed for the publication. § 11-608, Oregon Code 1930.

We have no occasion to impugn the zeal and diligence of defendants' counsel; but if any assumption can be legitimately indulged, it must be that the county court of Lane county did not, in fact, make any order for the publication of the citation or that the order

was an improper one and, therefore, adverse to the validity of the second adoption. This last thought finds some foundation in the fact that the certificate of the clerk, covering all documents touching upon the adoption record offered in evidence by defendants as one exhibit, is limited expressly to the authenticity of each particular item of the adoption record offered and does not attempt to certify it as a complete judgment roll.

The very circumscribed character of the clerk's certificate gives rise to wonderment concerning not only the question of the entry or nonentry of an order for publication but what else, if anything, a complete record might supply in determining whether or not there had been a strict and full compliance with the adoption statute in the instant matter. As stated in *Furgeson v. Jones,* supra, at page 212: "The facts essential to the exercise of the special jurisdiction must appear in such cases upon the record."

We again revert to the Furgeson case and here apply as our conclusion in this matter what was said by the court there in disposing of that appeal (17 Or 219 et seq.):

> "It is thus apparent that if the parents are living and do not belong to the excepted classes, that their consent must be obtained and is a prerequisite to jurisdiction; that without such consent jurisdiction does not attach, and the court is without authority to act and make a decree of adoption, and if it undertakes to do so, its decree will be a nullity, not voidable but void, and may be collaterally assailed in any action.
>
> "* * * * *
>
> "There is a marked distinction between jurisdiction and the exercise of jurisdiction. When jurisdiction has attached, all that follows is but

the exercise of jurisdiction, but jurisdiction does not attach until the conditions upon which it depends are fulfilled."

In this case, as in the Furgeson case, the jurisdictional facts are the consent of the parents, not one of them but both, as the statute requires, and the absence of it is fatal to the validity of the decree, unless the record reveals that jurisdiction of the parents was regularly obtained through the processes directed by law, and that the parents so served thereafter failed to appear and formally register their acquiescence in the proposed adoption.

The result thus reached makes it unnecessary to give consideration to what might be the status of plaintiff as an heir of the decedent Clarence Nelson Meyers, if the record here disclosed that the second adoption proceeding had been legally accomplished.

Affirmed.

BRAND, J.

I concur in the result. In my opinion, the second adoption proceedings were void. There appears to be no separate affidavit setting forth the facts which would warrant an order of publication of citation addressed to Clarence Meyer. There is a petition for adoption which was apparently signed some time in 1931 which recites that Clarence Meyer, immediately after the 10th day of May, 1927, "disappeared and ever since said time * * * has kept himself hidden away in such a manner that no knowledge of his actual residence can be obtained excepting that he is a non-resident of and has left the State of Oregon." The petition is verified by Ira C. Parks. Assuming that a verified complaint is such an affidavit as will sustain

an order for publication, the allegations thereof are, in my opinion, insufficient.

In *Dixie Meadows Co. v. Kight,* 150 Or 395, 45 P2d 909, this court said:

> "Resort to constructive service by publication of summons is predicated upon necessity, and if personal service can be effected by the exercise of reasonable diligence, substituting service is unauthorized. § 1-506, Oregon Code 1930;" Citing cases.

The reason for the rule is indicated by the following statement from American Jurisprudence:

> "* * * Service by publication, when personal service can be had, is not due process of law, and therefore any statute assuming to authorize it is unconstitutional. * * *" 42 Am Jur, Process, § 72.

The statutes concerning publication should be construed in the light of constitutional provisions. It appears therefore, that an affiant must show that the defendant could not be found by the exercise of due diligence because, if he can be found, he should be personally served, and cannot be served by publication. *Dixie Meadows Co. v. Kight,* supra, is authority for the proposition that:

> "'* * * the acts constituting due diligence, or the facts showing that he is a necessary party should be stated. To hold that a bald repetition of the statute is sufficient is to strip the court or judge, to whom the application is made, of all judicial functions and allow the party himself to determine in his own way the existence of jurisdictional facts—a practice too dangerous to the rights of defendants to admit of judicial toleration.'"

Neither the citation signed by the clerk, nor the order of default signed by the judge, makes any reference to any sworn statement of any affiant, nor is

there any finding to the effect that Clarence Meyer has kept himself hidden away so that no knowledge of his residence can be obtained. In an affidavit for publication, the probative facts must be stated, it not being sufficient merely to use the words of the statute. *Felts v. Boyer,* 73 Or 83, 144 P 420. The jurisdictional facts must appear in the affidavit, or at least in the complaint, and a finding by the court of the jurisdictional facts would be of no avail unless they appear in the affidavit or complaint. *Goodale v. Coffee,* 24 Or 346, 33 P 990.